The President, after consideration, stated the circumstances of the case, and delivered the opinion of the Court, in the following manner:
Shippen, President.
The facts were shortly these:—The Defendant, then Sheriff of Gloucester county in New-Jersey, having in his hands a sum of money belonging to the Plaintiff, who resided in the city of Philadelphia, in the year 1772, with the consent of the Plaintiff, lent it to one of his neighbours in New-Jersey at seven per cent. interest. A bond and mortgage was taken for it in the name of the Plaintiff, which were left in the Defendants hands for the purpose of receiving the money when it should become due, for the *223 use of the Plaintiff. The obligor, whose name was White, paid interest at different times to the Defendant, who paid it over to the Plaintiff. In the month of November, 1778, the Defendant received the whole principal and interest then due in Continental Money, and delivered up the bond and mortgage to the debtor.—It appeared by the testimony of White that when he paid the Money to Hugg he did not mean to make a legal tender of it, although he brought a wittness to be present at the payment, which was done, as he said, only because he himself did not well understand the English language. Hugg not having paid the money to the Plaintiff, she brings this action against him for money had and received to her use.
On the part of the Plaintiff it was contended on the trial, that the Defendant not having been compelled to receive the Continental Money, received it in his own wrong, and ought to answer the full sum in hard Money to the Plaintiff.
On the part of the Defendant, it was urged, that the Defendant being authorized to receive the money, had received it properly, in the then current money, made a legal tender by law, and could be answerable for no more than he had actually received.
The court left it to the jury to consider the justice and equity of the case, but hinted their opinion, that, considering the circumstances of the times, it might be most reasonable and just to settle the sum according to the scale of depreciation. At the same time telling them that this action was in the nature of a bill in equity, and that they might give such a sum in damages as they thought just. The jury found a verdict for the Plaintiff for the sum received in hard money. A motion was then made for a new trial on the of ground misdirection.
Having had time to deliberate and consider the law arising on this case, we are of opinion, that the court ought not to have left it to the jury to give in damages more than was actually received.
The action of assumpsit for money had and received, has been of late considered to be of so liberal a nature, that it is not to be wondered at, that on a sudden its extent should be mistaken. It is a very beneficial action, not only for the Plaintiff, but the Defendant; yet, it has its limits. It is beneficial to the Plaintiff, because, when he has another remedy as well as this, he may elect this, and is under no necessity to state the special circumstances of his case, but may make it out by evidence on the trial. For the Defendant it is beneficial, because, as Lord Mansfield says, he can be liable for no further than for the money he has received, and against that may go into every equitable defence upon the general issue. It is in fact an action to oblige the Defendant to refund what he has received; and the word refund, ex vi termini, precludes the idea of his being answerable for more than he has actually received. Interest, indeed, may be added as damages for the detention, but no more. In the kind of action the Plaintiff waves all torts and special damage is *224 and goes only for the money received; and so far confirms the Defendant’s act, as that he cannot gain say his right to receive it.
As to the Justice of the verdict, it is not so very apparent as to make us anxious to support it, against the rules of law. Col. Hugg was the Plaintiff’s agent in this matter, without any reward. He was an Officer in the American army, and probably thought the support of the war depended on the support of the credit of the continental money; it was the only money then in circulation; and though it had depreciated five or six for one, he might reasonably think it would not only be injurious to his own reputation, but to the common cause, to refuse it. All these circumstances must have been known to the Plaintiff, and yet she suffers the bond and mortgage to remain in his hands. She might have taken the securities from him, and abided by the consequences of refusing it herself. The debtor, White, it is true, swore he did not mean to force the money upon Hugg; but it is as true, that when he brought the continental money to discharge the debt, he brought a Witness with him, which he had not done before when he paid the interest in hard money. This circumstance might reasonably induce a belief in Hugg that he meant to make a legal tender of the money; and White, notwithstanding what he says, might possibly have availed himself of it as a legal tender, in case Hugg had refused the money.
For these reasons, I say, the justice of the verdict may be well questioned; yet if the case had been before the jury in such a way as that they could legally have given damages according to their discretion, perhaps, we should not have thought it proper to set aside their verdict, on account of their having, in a doubtful case, exercised their judgment, and drawn different conclusions from the facts. However as the law is clear, that in this kind of action, the Defendant is liable for no more than he has received, we must order a new trial. *

 On the second trial of this cause, the 14th of May 1788, Levy called the Defendant as a witness, to prove that the continental bills of credit, which he produced in court, were the identical bills, he received from White, in satisfaction of the mortgage. But Sergeant objected, that Hugg was not an agent within the meaning of the Act of Assembly, but merely a person who had officiously received the monies of another.
The Court rejected the witness. And Shippen, President, observed, that Hugg appeared to have been an agent to receive the interest ; but, it was evident, that he doubted in his own mind, whether his authority extended any farther; for, it is in proof, that when he was tendered the principal, he referred the mortgagor to the Plaintiff herself, who resided in Pennsylvania. There must be some satisfactory proof of his being actually an agent, before the Court can allow a party to be sworn, under the Act of Assembly, to indentify the money in dispute.
By the verdict of the second Jury, it appears, that they reduced the money according to the scale of depreciation, and added the interest.