EVERETT et al. *vs* THE UNITED STATES,

1. The cashier of a bank, in the course of his ordinary duties and by virtue of the general power appertaining to his office, has a right to transfer the paper securities of the bank, in payment of the bank debts.

2. Nor is it necessary that the inducement for an indorsement of such paper, by a cashier, should appear : courts will presume, in the absence of proof to the contrary, that the transfer has been properly made.

3. But this inference would not be conclusive : and a party would be authorised to controvert the fairness of such transfer, by shewing that it was not made in the regular course of business, but in prejudice of the rights and interests of the bank—and thus defeat the effect of a transfer to an assignee.

4. How far a common seal may be necessary, to authenticate the acts of a corporation—*quare?*

5. But, while a corporation must in general act through its common seal—it may appoint an agent, whose acts, within the sphere of his powers, would be valid without a seal.

6. An arrangement between a creditor and the debtor, whereby time is given to the latter, can not prejudice the sureties—no evidence being produced, shewing a knowledge of, or acquiescence on the part of the sureties, to such arrangement.

7. So, where a bank made an arrangement with its debtor, by giving time, and there was no evidence of a knowledge of the matter by the sureties, it was held to be erroneous for a court to charge, that from the acts of the bank, a jury might infer a knowledge of the arrangement, made with the debtor, by the sureties.

8. The approval by a corporation of the acts of one, acting as its agent, makes those acts valid, whether authorised by a delegated authority.

Assumpsit in the Circuit Court of Mobile county, on a note of the following tenor, to wit:

"$5,162 50.—Ninety days after date, we, George Fisher as principal, and Robert G. Haden and John F. Everett, as securities, do jointly and severally promise to pay, to the President, Directors and Company of the Tombeckbee Bank, the sum of five thousand one hundred and sixty-two 50-100 dollars, negotiable and payable at the said Bank at St. Stephens, for value received.—As witness, our hands, this 10th day of March, 1820.
                    [Signed,]        "Geo. Fisher.
                                     "Robt. G. Haden.
                                     "Jno. F. Everett."

Which note had been assigned to the United States.

The United States of America, by their attorney, complained of Robert G. Haden and John F. Everett, being in custody, &c., of a plea of trespass on the case. For that whereas, theretofore, to wit, on the tenth day of March, in the year of our Lord, one thousand eight hundred and twenty, the said defendants, together with one George Fisher, who was not sued in that action, made their certain promissory note in writing, bearing date the same day and year aforesaid, and then and there promised to pay, ninety days after the date thereof, jointly and severally, to the President, Directors and Company of the Tombeckbee Bank, the sum of five thousand one hundred and sixty-two dollars and fifty cents, for value received; negotiable and payable at the said Bank, at St. Stephens—and then and there delivered the said promissory note, to the said President, Directors and Company ; and the said President, Di-

rectors and Company, to whom, or to whose order the payment of the said sum of money, mentioned in the said note, was thereby to be made, afterwards, and before the payment of the said sum of money, mentioned in the said note, or any part thereof, and before the time appointed by the said note, for the payment thereof, to wit, on the day and year aforesaid, at the county aforesaid, assigned the said note, and by that assignment, ordered and appointed the contents of the said note, to be paid to the said plaintiff —and then and there delivered the said note, so assigned, to the said plaintiff,—of all of which said several premises, the said defendants, afterwards, to wit, on the same day and year aforesaid, at the county aforesaid, had notice,—by means of which several promises, and by force of the statute, in such case made and provided, the said defendants then and there became liable to pay to the said plaintiff, the said sum of money mentioned in the said note specified, and of the said assignment; and being so liable, they, the said defendants, in consideration thereof, afterwards, to wit, on the same day and year aforesaid, and at the county aforesaid, undertook, and then and there faithfully promised to pay to the said plaintiff the said sum of money, in the said promissory note mentioned and specified, according to the tenor and effect of the said promissory note, and of the said assignment.

And the said plaintiff averred that afterwards, to wit, on the eleventh day of June, in the year of our Lord one thousand eight hundred and twenty, to wit, at the county aforesaid, the said promissory note, so assigned, as aforesaid, was duly presented and shewn at the said Tombeckbee Bank, at St. Stephens aforesaid, for payment thereof, and payment of the said sum of money therein specified, was then and there duly requested, according to the tenor and effect of the said promissory note, and of the said assignment—but that,

neither the said defendants nor any other person or persons, on behalf of the said defendants, did, or would, at the said time, when the said promissory note, so indorsed, as aforesaid, was so presented and shown for payment, as aforesaid, or at any time before or afterwards, pay the said sum of money therein specified, or any part thereof—but wholly neglected and refused so to do, and still did neglect and refuse so to do—although thereto often requested,—to the damage of said plaintiff, of ten thousand dollars; and therefore brought suit, &c.

And the said defendants, by their attorneys, came and defended the wrong and injury, &c., and for plea, said that they did not assume and promise, in manner and form, as the said plaintiff in the said declaration had alleged—and of this they put themselves upon the country.  And for a further plea, in this behalf, the said defendants said, *actio non*, &c., because, they said the said defendants had not undertaken and promised, at any time within six years, next before the commencement of this suit—and this they were ready to verify: wherefore they prayed judgment, &c. And for further plea in this behalf, the said defendants said *actio non*, &c., because they said that they did not, at any time within six years, next before the transfer of the said promissory note, declared on from the Tombeckbee Bank to the present plaintiff, undertake and promise, in manner and form as the said plaintiff had above thereof complained against them—and this they were ready to verify: wherefore they prayed judgment, &c.  And for a further plea in this behalf, said defendants said, *actio non*, &c., because they said that they had fully paid and satisfied the said sum of money, in the said promisory note mentioned.

And for replication to the first plea of the defendants, the plaintiff did the like.  And for replication to the second plea aforesaid, pleaded by the defendants, the plaintiff said it ought not to be barred from having or

maintaining the aforesaid action, because it said, defendants did assume and promise to pay, within six years next before the commencement of this suit, to wit, on the first day of October, in the year one thousand eight hundred and twenty-four—and upon this took issue to the country—wherefore, prayed judgment, &c.

And for replication to the third plea, &c. the plaintiff said that it ought not to be barred from having or maintaining the action aforesaid, against them, because the said defendants did, within six years next before the transfer of the said note, promise and undertake to pay the same, to-wit, on the first day of October, one thousand eight hundred and twenty-four, and of this took issue to the country, &c.

And for a further replication, plaintiff denied that defendants had paid or satisfied the note, &c. And to these several replications, the defendants filed their *similiter*.

Defendants attorney moved for an order for a *subpœna duces tecum*, to issue to John B. Hazard, cashier of the Tombeckbee Bank, to produce in court certain books and papers, to be read as evidence in this cause, affidavit of materiality, &c. having been filed, which motion was granted. And the said cause was continued from term to term until the fall term of eighteen hundred and thirty-five, when the defendant, John F. Everett, filed the following further pleas:

And the said defendant, John F. Everett, for a further plea in this behalf, for himself, separately and alone, by his attorney, came and defended the wrong and injury, when, &c.—because he said that he did not assume, undertake, nor promise, in manner and form as the said plaintiff had above complained against him; and of this he put himself upon the country, &c.

And for a further plea in this behalf, the said John F. Everett, for himself separately and alone, by his attorney, came and defended the wrong and

injury when, &c. because he said, that the said note in the plaintiff's declaration mentioned, was made and executed by him the said defendant, as surety merely, of George Fisher, who was principal, and not otherwise, and which fact at the time of the execution and delivery of said note, was well known to the said payees thereof, and the said defendant further said, that after the maturity of said note, and before the commencement of said suit, and while the said note was the property of the Tombeckbee Bank, they the said payees did give further day of payment to the said George Fisher, principal, and with him did agree, to suspend the collection thereof during a long period of time, to wit, during one year, and did so give day of payment, without the leave or consent of him this defendant, and against his will and consent, and this he the said defendant was ready to verify, wherefore he prayed judgment, &c.

And the said United States, for replication to the several pleas above severally pleaded by John F. Everett, said that it should not be barred or precluded from further having or maintaining the action aforesaid, because the said President, Directors & Company of the Tombeckbee Bank, did not agree with said George Fisher, to suspend the collection of the said note, by any agreement for a valuable consideration, without the leave or consent, and against the will and consent, of the said defendant, and of this took issue to the country, and the said John F. Everett did the like, &c.

And afterwards, to wit, on the fourth day of November in the year one thousand eight hundred and thirty-five, the following judgment was rendered, to wit:—This day came the parties by their attorneys, and John F. Everett one of the defendants in this cause, moved the court for leave to plead, several and separate pleas, in this case, which motion being heard, is by the court now here granted; whereupon the said

pleas were filed; and thereupon the plaintiff by attorneys, moved the said court, that the second plea by him thus filed, be stricken from the record, which being heard, and all the matters of law arising therefrom being fully understood, it is considered by the court, that the said motion be over-ruled; and thereupon came a jury, who being duly elected, tried and sworn, well and truly to try the issue joined, upon their oaths, said, that they found for the plaintiff, and assessed the damages, at five thousand five hundred and seventy-two dollars. It was therefore considered by the court, that the plaintiff recover the sum of five thousand five hundred and seventy-two dollars by the jury assessed, and the costs in that behalf expended.

And the following bill of exceptions was filed, to wit: On the trial of this suit, the plaintiff produced and read in evidence, the note described in the declaration; and, to prove the assignment of the same to it, read an indorsement which was on the said note,—which indorsement was as follows: "J. B. Hazard, Cash'r." It was then proved, that said Hazard was cashier of the Tombeckbee Bank, and that such indorsement was in his hand-writing. This was all the evidence offered of an assignment to the plaintiff, and no other evidence was offered of the authority of said Hazard, to make the said assignment.

The defendant objected to this evidence, as insufficient, to prove the authority of the said Hazard, to assign the said note, or to prove the fact of assignment, as alleged. But the court admitted the testimony as sufficient to prove these facts—to which the defendants excepted.

In the further progress of the trial, the plaintiff offered the subjoined letter, marked A, as evidence to take the case out of the effect of the statute of limitations, against the defendant. The said letter was proved to be in the hand-writing of, and signed by George

Fisher, who was the principal in the note sued on.—
To the introduction of this letter, the defendants ob-
jected ; but the court admitted the same—to which
the defendants excepted.

In the further progress of the trial, the defendants
offered evidence, tending to shew, that the said George
Fisher submitted a verbal proposition to the said Tom-
beckbee bank, before the said note was assigned, to
plaintiff, that he would transfer to them certain lands
and land certificates, if they would give him eight
years to pay said note, in annual instalments.  This
proposition was accepted by the bank, in the manner
as stated in a resolution or minute of the transactions
of the Board of Directors of said Bank.  It was in
proof, by the individual who submitted the proposition
of said Fisher, that he never communicated to said
Fisher, the condition on which the said proposition
was accepted by the said board of Directors.  Said
resolution or minute of the board of Directors is here-
to attached, marked B.  No evidence was offered, to
shew, that the said condition was ever communicated
to the said Fisher, or said defendants—nor was any
evidence offered, of any assent of said defendants, to
the contemplated arrangements.

Evidence was also offered, tending to shew, that
George S. Gaines received from said Fisher, a trans-
fer of lands, and of land certificates, under his said
proposition ; and at the time of said transfer, he gave
to said Fisher an instrument, a copy of which is here-
to attached, marked C.

Evidence was offered, to shew a sale of the said
lands, under the direction of the said bank, and a re-
ceipt by it of the proceeds of the sale, before the as-
signment to the plaintiff.  No evidence whatever was
offered to shew that the letter A, read in evidence,
was written at the time it bore date, or when it came
to the hands of the officers of the said Bank.  It
was further proved that Fisher was reputed insolvent,

after the year one thousand eight hundred and twenty-one, and so continued. On this evidence, the defendants requested the court to charge the jury—

1. That no promise made by George Fisher, within six years after the cause of action accrued, or within six years next before the commencement of this suit, would so operate as to bind these defendants, or prevent the statute of limitations from attaching or running;—which charge the court refused to give, but charged the jury, that if a promise to pay was made by the said George Fisher, before six years had elapsed from the maturity of the note, it would so operate as to prevent the statute from running in favor of defendants; and that the statute would only begin to run from the date of such promise. But, if the six years had expired, that no promise to pay by Fisher could then renew the liability of the defendants,— to which refusal to charge, and charge as given, the defendants except.

2. The defendant further requested the court to instruct the jury, that the letter of George Fisher, A, offered in evidence as before stated, purporting to be dated the first of October one thousand eight hundred and twenty-four, did not of itself, establish the fact, that it was then written.—That the time when the promise was made, was a fact to be proved by other evidence—which charge the court refused to give; and instructed the jury that the date, as well as the balance of the letter was before them. That they were authorised to judge from the appearance of the same, whether the date was genuine. If there were any suspicious circumstances, they could consult of them, and if they thought the date was improperly attached, they might reject the letter. But it was of itself *prima facie* evidence, that it was written when it purported to be dated—to which refusal to charge, and charge as given, the defendants excepted.

The counsel for the plaintiff having insisted in ar-

gument before the jury, that they might and should
infer the assent of the defendants, to the conditions
imposed by the bank, as set out in B, from the fact
that the arrangement was completed by Fisher, with
Gaines, the cashier,—the defendants requested the
court to instruct the jury, that no assent of theirs
could be inferred from the acts of the said bank, its
officers, or the said George Fisher; that the defen-
dants could be alone bound by their own acts or ad-
missions,—which charge the court refused to give, as
asked for—but charged the jury, that some act, or ad-
mission of some of the defendants, would be necessa-
ry to bind them; but that the said resolution or mi-
nute of the board of directors of said bank, marked
B, was before them, and that it was competent for the
jury to infer, from the same, the assent of the said
defendants, to the arrangements proposed and contem-
plated, between Fisher and the bank; but that they
were not compelled to draw such an inference—nor
was the same conclusive—but that they could draw
such an inference, if they thought proper; to which
refusal to charge, and charge as given, the defendants
excepted.    And the bill of exceptions was signed and
sealed accordingly.

### EXHIBIT A.

" To the President, Directors and Company of the
Tombeckbee Bank:—Gentlemen—Having business at
the North, and finding part of my lands, which I have
transferred to George S. Gaines, as trustee of said
bank, for the use of the bank, a part of said lands en-
tirely thrown away, by the relinquishment which will
appear by the certificate herewith; and wishing to pe-
tition Congress to permit me to have it allowed to me,
in the payment of other lands, which are transferred
to the bank.    And also, I transfer to the bank, a quar-
ter section, which, at the time, was paid for by R.
Raines; and, through mistake, lands were relinquish-

ed, and applied to that quarter, the North-west quarter of section twenty-six, in township seven, range three. This quarter I wish released to me, and I will transfer a fraction of six hundred and thirty-two acres, which I have sold, and will authorise the bank to receive the note, payable to said bank, in place of the quarter section, as above. It will be understood that I have sold it to Stephen Williams, for five hundred dollars. Should he not comply with his contract, the bank shall not sell it for a less sum than five hundred dollars, before the first of June next, at which time I am willing that all my lands, transferred to the bank shall be sold, if I do not pay or procure payment of my bank debt, and not till then. I am willing to transfer the certificate to the bank, and they may take Williams's note, or I will get it myself. It is my wish to pay the debt, and save my lands, that have been heretofore transferred. Respectfully yours.

" Oct. 1st. 1824.                    " George Fisher."

" George Fisher's notes delivered—Wm. Crawford —10th June, 1838."

### EXHIBIT B.

" Friday, 7th September, 1821, the board of directors met. Present, William Crawford, President, Buchannan, Malone, Ross, Lyon, Pickens, B. S. Smoot.— Col. Fisher's new proposition was laid before the board, and it was agreed, that on condition of his securities' consenting to the arrangement proposed, that the President and Cashier be authorised to enter into it, and conduct it to the best advantage in their power, for the interest of the bank."

And at the Fall term, one thousand eight hundred and thirty-five, of the court, the defendants entered a motion for a new trial, and having previously taken exceptions to the opinion of the court, on matters of

law arising during the trial—the court refused to entertain the motion for a new trial, unless the defendants would waive their bill of exceptions. The defendants refusing to do so, their motion was not heard; to which opinion of the court, the defendants, by their counsel, excepted, and prayed their bill of exceptions might be signed, &c., which was accordingly done; and thereupon the defendants took out their writ of error, &c.

Argued by *Hopkins*, for the plaintiff in error.
            *Sallee*, contra.

COLLIER, C. J.—The defendant in error brought assumpsit on a promissory note, dated the tenth day of March, eighteen hundred and twenty, against the plaintiffs—by which George Fisher, as principal, and the plaintiffs, as his sureties, promised to pay to the President, Directors and Company of the Tombeckbee Bank, the sum of five thousand one hundred and sixty-two dollars and fifty cents, ninety days after date.

There were two bills of exception taken on the trial. The first states it to have been proved that the note was indorsed, by John B. Hazard, *the cashier of the bank*, to the defendant. To this evidence the plaintiffs objected, as insufficient to pass the title in the note, and insisted that there should appear an authority, to the cashier, to make the transfer. But the objection was overruled.

It also appeared, from the first bill of exceptions, that Fisher proposed to the Bank, after the maturity of his note, to transfer certain lands and land certificates to its proper officers, if the time of payment was extended, so as to allow him to discharge it in eight annual instalments—to which the President, &c. of the bank, assented, on terms which were not shewn to have been communicated to Fisher. Evidence was,

6p                    23

however, "offered, tending to shew that George S. Gaines received from said Fisher a transfer of lands, and land certificates, under his said proposition, and at the time of such transfer, he gave the said Fisher an instrument, a copy of which is hereto attached, marked C. Evidence was offered to shew a sale of the said lands, under the directions of the said Bank, and a receipt by them, of the proceeds of the sale, before the assignment to the plaintiffs."

A letter of Fisher, dated the first of October, eighteen hundred and twenty-four, accompanying the bill of exceptions, was read to the jury, for the purpose of avoiding the effect of the statute of limitations, which was pleaded by the plaintiffs. This letter was held, by the Circuit court, to be good evidence for that purpose.

The counsel for the plaintiff, (defendant here,) having insisted in argument before the jury, that they might, and should infer the assent of the defendants, to conditions imposed by the bank, as set out in B, from the fact that the arrangement was completed by Fisher, with Gaines, the cashier. The defendants (plaintiffs here,) requested the court to instruct the jury, that no assent of theirs could be inferred from the acts of the said Bank, its officers, or the said George Fisher; that the defendants, could be alone bound by their own acts or admissions. Which charge the court refused to give as asked for—but charged the jury, that some act or admission of the defendants would be necessary to bind them; but that the said resolution, or minute of the Board of Directors of said Bank, marked B, was before them, and that it was competent for the jury to infer from the same, the assent of the said defendants, to the arrangement proposed and contemplated between Fisher and the Bank; but that they were not compelled to draw such an inference, nor was the same conclusive—but that they could draw such an inference, if they thought

proper. To which refusal to charge, and charge as given, the defendants except," &c.

The paper marked B, referred to above, is part of the bill of exceptions, and is as follows:

"Friday, 7th September 1821.—the board·of directors met. Present, William Crawford, President, Buchannan, Malone, Ross, Lyon, Pickens, B. S. Smoot.—Col. Fisher's new proposition was laid before the board, and it was agreed, that on condition of his securities' consenting to the arrangement proposed, that the President and Cashier be authorised to enter into it, and conduct it to the best advantage in their power, for the interest of the bank."

The second bill of exceptions was abandoned by the plaintiffs in error, at the argument.

The questions of law arising upon so much of the first bill of exceptions, as relates to proof, in avoidance of the statute of limitations, and the charge of the court thereon, were not insisted on by the plaintiffs, in argument. We, therefore, decline considering them, now—leaving them to be determined, when they shall hereafter arise.

The questions proposed to be considered, are—

1. Did the indorsement of the note in question pass the right of action thereon, to the defendant in error?

2. Can the assent of the plaintiffs in error, to the arrangement between Fisher, the principal debtor, and the President, &c. of the Bank, for an extension of the time of payment, be inferred from the acts of the officers of the bank, *alone?*

1. The act incorporating the Tombeckbee Bank, invests "the President, Directors and Company" of that institution, with power, "to ordain, establish, and put in execution, such by-laws, ordinances and regulations, &c., as they may deem necessary and expedient for the good government of the said corporation,"

&c. It also provides for the appointment of a cashier, or other officers.*

The right of the cashier to transfer the negotiable paper of the bank, depends upon the extent of his powers, as defined by the "by-laws, ordinances and regulations," of its " President, Directors and Company;" or else upon the duties which devolve upon that officer, resulting from the nature of his situation. If he be an agent, as most clearly he is, his authority is to be ascertained by the character of his agency; for, when this is determined, we have no difficulty in deducing from thence, his powers,—the law always implying the delegation of such as are within the scope of his employment.

In *Fleckner vs The United States Bank,*† Mr Justice *Story,* in delivering the opinion of the court, remarks, " The cashier is usually intrusted with all the funds of the bank, in cash, notes, bills, &c., to be used from time to time, for the ordinary, and extraordinary exigencies of the bank. He receives directly, or through the subordinate officers, all moneys and notes. He delivers up all discounted notes and other property, when payments have been duly made. He draws checks from time to time, for moneys, wherever the bank has deposits. In short, he is considered the executive officer, through whom, and by whom, the whole moneyed operations of the bank, *in paying* or receiving debts, or discharging or transferring securities, are to be conducted. It does not seem too much, then, to infer, in the absence of all positive restrictions, that it is his duty, as well to apply the negotiable *funds,* as the moneyed capital of the bank, to discharge its debts and obligations." Here is a clear recognition of the right of a cashier, in the course of

---

*Toulmin's Digest 41-2.          †8 Wheat. 358.

his ordinary duties to transfer the paper securities of the bank, in payment of its debts.

In the case at bar, it is true, that the inducement to the indorsement by the cashier, does not appear, nor is it considered important that it should. The right being clear, even without a previously expressed authority (as one implied from the nature of his office) we cannot suppose, without proof, that the cashier abused his powers by improperly transferring the credits of the bank; but must intend that the act was done for some legitimate purpose. And in the case already cited, the court remark, that " the acts of the cashier, done in the ordinary course of the business, actually confided to such an officer, may well be deemed *prima facie* evidence that they fell within the scope of his duty.

In *Fleckner vs the United States Bank,* the court need not have placed their judgment upon the nature of the office of a cashier, or the powers incident to it; for in that case, there was a subsequent recognition of his authority. Yet both grounds are taken, and the reasoning employed, we think, is very satisfactory to sustain the first.

But was this question *res integra,* to be settled with reference to the analogies of the law only, our conclusion would be favorable to the legality of the indorsement of the cashier, for the reason that such an act was within the scope of the powers ordinarily conferred upon that officer. This inference, however, would not be conclusive, and it would still be competent for the party sued, to controvert the fairness of the transfer, by shewing that it was not made in the regular course of business, but in prejudice of the rights and interests of the bank. Where this is the case, no title could pass to the assignee, and consequently no action could be maintained by him.

In examining this question, we have not thought it necessary, to consider *how far* a common seal may be necessary, to authenticate the acts of a corporation.

It is clear that the ancient strictness upon this point has been greatly broken in upon, by a more enlightened current of modern decisions.— *Vide The Bank of Columbia vs Patterson ;** *The Mechanics' Bank of Alexandria vs the Bank of Columbia;*† *Fleckner vs The United States. Bank.*‡ From these authorities, it will sufficiently appear, that though a corporation must, in general, act through its common seal, yet it may appoint an agent, whose acts, within the sphere of his powers, do not require any such appendage, to impart to them validity.

2. It is a rule of very general, if not universal application, that no one can be bound by the acts and admissions of another, over whom he has exerted no control; and if to this rule there can be any exception, the charge asked, and that given by the judge to the jury, furnish, in themselves, no reason why we should thus regard this case.

There is not the slightest evidence that the plaintiffs were advised that time had been given to Fisher, their principal, yet the jury are instructed, in substance, that a knowledge of such an arrangement by the plaintiffs, as well as their assent to it may be inferred from the "resolution or minute of the brard of directors of said bank, marked B." With equal justice might the operation of the statute of limitations be counteracted, by inferring that the creditor would never have suffered the statute bar to run, had not the debtor acknowledged the debt, so as to prevent it from becoming effectual. In principle, there is no difference between the case stated in the charge to the jury, and that we have supposed—and the principle is this, that where a demand once incurred, is discharged by the negligence or positive acts of the creditor,

---

*7 Cranch, 299.          †5 Wheat. 326.
        ‡8 Wheat. 358.

a jury may infer from his subsequent acts or omissions, incompatible with the idea of a discharge, that the liability is still continuing. The principle maintained in the instruction to the jury, needs but to be simplified, to induce its rejection.

Had the plaintiffs been informed of the arrangement between the Bank and Fisher, without objection, such evidence might with propriety have been left to the jury, as authorizing the inference, (if unexplained in any manner) that it had received their assent; but the record does not inform us, that such proof was offered.

The defendant's counsel, in his argument, attempted to shew, that the charge to the jury was upon an abstract question,—that by the resolution or minute of the Board of Directors, the President and Cashier of the Bank, *jointly*, were authorized to make the arrangement with Fisher,—that George S. Gaines alone acted, and that there was no proof that he was either President or Cashier. Without pretending to examine, whether it is necessary for all persons to whom a power is given, to unite in its execution, we are persuaded that the question does not arise in this case. The bill of exceptions informs us, that George S. Gaines received of Fisher, a transfer of lands and land certificates under his proposition, and that " evidence was offered to shew a sale of the said lands under the directions of the said Bank, and a receipt by them, of the proceeds of the sale, before the assignment to the plaintiffs." (Now defendant.)

Here was an approval of the agency of Gaines, which is well settled to be equivalent to a previously delegated authority.—(*Fleckner vs U. S. Bank.*) So that it is quite immaterial whether he was either President or Cashier.

For the reason then, that there was no evidence of the plaintiffs' assent to an extension of the time of

payment, given by the Bank to Fisher, the judgment is reversed, and the cause remanded.

GOLDTHWAITE, J. not sitting in this case.