ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

AT DECATUR,

AUGUST TERM, 1849.

No. 38.—MERCHANTS' BANK OF MACON, plaintiff in error, *vs.* CAROLINE RAWLS, adm'x, and CHARLES TAYLOR, adm'r of JOHN RAWLS, deceased, defendants.

[1.] In an action against a special agent who collects money for his principal, it is not incumbent on the plaintiff to prove that he has not accounted for or paid it over.

[2.] If one sells the property of another without authority, the owner may waive the *tort* and sue him for the money.

[3.] In a suit by a bank, the defendant having introduced in evidence the books of the bank: *Held*, that the defendant cannot impeach the books as a whole, but may show that particular items in the books are wrong and disprove them, and that by mistake or fraud they have been improperly kept.

[4.] *Held*, that a party cannot dismiss his action after the publication of the verdict, and that a verdict shall be considered as published, *eo instanti*, in which it is handed to the plaintiff's counsel or other person directed by the Court to receive it.

Assumpsit, &c. Bibb Superior Court, and motion for new trial. Heard before Judge FLOYD, January Term, 1849.

The Bank of Hawkinsville, now the Merchants' Bank of Macon, the plaintiff in error, in the year 1842, held a *fi. fa.* against William F. Bond, for the sum of two thousand dollars, principal. John Rawls, then President of the Bank of Hawkinsville, on the 4th day of March, 1842, transferred said *fi. fa.* together with another *fi. fa.* to Joseph Bond, and attached to the same a receipt, of which the following, except the statement of the *fi. fas.* is a copy:

"Received, Hawkinsville, March 4th, 1842, of Joseph· Bond, the principal, interest and cost of the above two stated cases, for value received, which·we give due and legal control of the two *fi. fas.* without recourse on the bank.

JOHN RAWLS, President."

John Rawls died in 184—. The plaintiff in error instituted an action of assumpsit against his representatives, the defendants in error, returnable to the March Term of Bibb Inferior Court, 1847. The declaration contained three counts—two of which were founded upon the receipt from Rawls to Joseph Bond; the other was for money had and received. At the trial, the latter count only was relied on.

The defendants filed the pleas of the general issue, payment and set-off.

The cause was tried at January Term, 1849, of Bibb Superior Court, on the appeal, before Judge *Floyd.*

The plaintiff in error introduced in evidence the *fi. fa.* against William F. Bond, and the receipt from Rawls to Joseph Bond, thereto attached—having first proved the signature of Rawls.

The plaintiff also introduced evidence to show that Rawls had not paid over the money collected upon the *fi. fa.* to the bank, and closed.

The defendants then introduced various books of plaintiff, containing the transactions of the Bank of Hawkinsville.

The Court, in its charge to the Jury, stated, that if the plaintiff had introduced the receipt from Rawls to Joseph Bond and closed, he would, upon motion, have awarded a nonsuit, and held that it was necessary for the plaintiff to show that Rawls had not paid over and accounted to the bank for the money received by him. The Court also instructed the Jury, that "If they were satisfied, from an inspection of the books, (of the bank,) that they had not been fairly kept, or had been altered, or entries improperly eras-

ed, leaves torn out, &c. that they might disregard them, and, in that event, they ought to find for the defendant."

The Jury retired, and by consent of counsel and the Court, it was agreed that they might, after making up a verdict, disperse, and the foreman keep and deliver it next morning. The next day the Jury returned the writ, with their verdict written upon it, and delivered the same to counsel for plaintiff. Whereupon, plaintiff's counsel, before reading out the verdict, moved to dismiss the cause. Which motion the Court refused, and directed the verdict, which was for the defendant, to be received and recorded.

Counsel for plaintiff then moved for a new trial on various grounds. Which motion was heard and overruled by Judge *Floyd*, at January Term, 1849. Whereupon, counsel for plaintiff filed his bill of exceptions, and upon those exceptions assigned the following errors in the decisions and rulings of Judge *Floyd* :

1st. The Court erred in ruling that plaintiff, after proving that Rawls had received the money sued for, was bound to go on and show that Rawls had never paid it over; and the Court erred in charging the Jury, that if plaintiff had stopped short with proving that Rawls received the money of plaintiff, he would have nonsuited plaintiff; and farther, the Court erred in charging the Jury, that if plaintiff had failed to prove that Rawls had never paid over said money or accounted for it, they must find for defendants.

2d. The Court, in refusing the plaintiff his right to be nonsuit, or dismiss his case after the Jury came to the bar with their finding, but before said finding was read out or recorded, committed error.

3d. The Court erred in ruling and charging that defendants, after introducing plaintiff's books, might attack them; and farther, the Court erred in charging the Jury, that if they found, by inspection, that the books were not fairly kept, but should find any entries improperly erased, or leaves torn out, they might disregard the books, and, in that event, they ought to find for the defendants.

Cole, Hines and Rutherford, for plaintiff in error.

Gresham and S. T. Bailey, for defendants.

C. B. Cole, for plaintiff, submitted the following points and authorities :

1. Whenever one man has in his hands the money of another, which he ought to pay over, he is liable in an action of assumpsit for money had and received. When the fact is proved that he has the plaintiff's money, *if he* cannot show that he has a legal or equitable title to it, the law creates the privity and the promise. 17 *Mass. R.* 574. 1 *Nott & McC.* 54. 5 *Hill's R.* 396. 2 *Term Reps.* 366.

2. Money received by an agent, is received for the use of the principal, and an action will lie immediately for the money. The money being paid to Rawls, the law created an implied promise on his part in favor of the plaintiff, which rendered him liable without previous demand. 5 *Hill's R.* 395. 1 *Wend. R.* 534. 18 *John. R.* 133, 484. 7 *John. R.* 131. 7 *Pick. Reps.* 214. 1 *U. S. Sup. Dig.* 191. 1 *Starkie's R.* 845. 3 *Camp. R.* 347. *Douglass,* 137. 1 *American Cases,* 520, 521. 2 *Saunders' Pl.* 673.

3. In an action of assumpsit for money had and received, the plaintiff is only required to prove his title to the money and the defendant's receipt of it. 2 *Greenleaf's Ev.* 96. 2 *Starkie's Ev.* 62. 2 *Phillips' Ev.* 117.

4. Rawls was not a trustee, but at most a voluntary agent, and he was bound to pay the money over at once without demand. 1 *American Leading Cases,* 520 *and* 521. 5 *Hill's R.* 395. 1 *Wend. R.* 534.

5. Where one sells the property of another, and receives the price in money, the owner may maintain assumpsit for money had and received; and even though the party had no authority to sell, *the owner may waive the tort and sue in assumpsit. Dickinson vs. Whitney,* 4 *Gilman's R.* 406. 2 *U. S. Annual Dig.* 36. 1 *U. S. Sup. Dig.* 180. 5 *Hill's Reps.* 577.

6. A plaintiff may dismiss his cause at any time before the verdict has been promulgated and recorded. There is no verdict till the finding of the Jury is recorded. 7 *John. R.* 32. 6 *John. R.* 68. 3 *John. R.* 255. 10 *Searg. & Rawle,* 84. 1 *Const. R. S. C.* 237. 1 *Wend. R.* 36. *Dyer,* 204, *b.* *Plowden,* 209. *Coke Litt.* 227, *b.* 10 *Bacon's Ab.* 306, 315. 1 *Bailey's R.* 263. 3 *McCord's R.* 558. 2 *Wendell's R.* 295.

Merchants' Bank of Macon *vs.* Rawls and Taylor.

The case in *Salkeld*, 178, upon which counsel for defendant may rely, may seem to militate against my principle and authorities, but upon examination they are perfectly reconcilable. The case in *Salkeld* must have been after the verdict had been recorded.

7. The Cashier of a Bank has alone the authority to receive money due the Bank. *Angell & Ames*, 244, 251.

SAM'L T. BAILEY, for defendants in error.

The same presumptions apply to corporations as to individuals. *Angell & Ames*, 187, 188.

Agency may be proved. *Ib.* 220.

By bringing action on the contract of an agent, the principal ratifies. *Paley on Agency*, 173. 4 *T. R.* 126. 17 *Eng. Com. L. R.* 330. 1 *Ala. R.* 143.

If the principal do not promptly disavow the act of the agent he affirms it. 14 *Serg. & R.* 27.

After a general verdict a discontinuance is never allowed. 1 *Tidd's Prac.* 629, 679. 2 *Arch. Pr.* 234. 1 *Salk.* 178.

A privy verdict is null until published. 1 *Arch. Pr.* 198.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The plaintiff in this action relied upon his counts for money had and received. We view it as an action brought by the bank for money claimed to belong to it, *ex equo et bono*, in the hands of the defendant. By the proofs it seems that Mr. Rawls, whilst he was *President of the Bank*, sold two judgments belonging to the bank to Joseph Bond, and received the money. This suit goes for that money. The principles upon which the equitable action for money had and received depends are settled. It lies in all cases for the plaintiff's money in the hands of the defendant, which in equity and good conscience he has no right to retain, and it is necessary for the plaintiff generally to prove *only* two things, to wit: his right to the money, and the defendant's possession. In this case the Court below held, that he must go farther, and prove that the defendant *had not accounted for it.* That decision gave rise to the first exception. For the general proposition that plaintiff in this action need prove only his title

and the defendant's possession, see 2 *Greenleaf's Ev.* §117. *Feltham vs. Terry, cited in Cowp.* 419.    *Moses vs. McFarlan,* 2 *Burrow,* 1005.    *Eastwick vs. Hugg,* 1 *Dall.* 222.    *Lee vs. Shore,* 1 *B. & C.* 94.    *Cowp.* 749.    4 *M. & S.* 748.    13 *East,* 20.    *Ib.* 130. 17 *Mass.* 560.    7 *Cowen,* 662.

Is there any thing in this case which will take it out of the general rule ?    It is said in the argument, that Rawls was, at the time of this transaction, the President of the bank ; that in that character he sold the judgments and received and receipted for the money, and, therefore, the act of receiving it was an official act, and he is not liable until he has been proven in default.    The vice of this argument · consists in the assumption that the *President of a bank* is its receiving officer.    He is not by the general law, and is not in this case by any charter provision, or by law of the institution over which he presided.    It was competent for the *President,* by authority from the Directors, to execute the sale of these judgments, but not, I apprehend, without such authority ; for, in general, the Board of Directors have the authority to control all the property of the bank.    *Angell & Ames on Corporations,* 242, 243.    11 *Mass.* 94.    *Ib.* 288.    14 *Mass.* 180.    17 *Ib.* 97.

It is in general the duty of the Cashier to receive directly, or through subordinate officers, the funds of the bank—it is by and through him that the whole moneyed operations of the bank are conducted.    He is the receiving officer and agent of the bank. *Angell & Ames on Corporations,* 244.    8 *Wheat.* 360, 361.    12 *Serg. & Rawle,* 265.    6 *Port.* 166.

These views of the powers and duties of the officers of the Bank of Hawkinsville, afterwards the Merchants' Bank of Macon, by the general law, are not varied by the charter of that institution.    Mr. Rawls was not, therefore, as *President,* authorized to receive this money, and liable to pay it only upon proof of default.    The record discloses no by-law or special order authorizing him to transfer these judgments and receive the money.    He can derive no immunity from the general rule above laid down, from the fact that he was the *President of the bank,* and consummated this transaction in that name.

How, then, does [he stand ?    Altogether one side of his official character.    He occupies the position of one who, without authority, has sold the goods of another and retains the proceeds. That is the position which this record gives him.    The ground

Merchants' Bank of Macon *vs.* Rawls and Taylor.

upon which Judge *Floyd* put his opinion, seems to be this, to wit: it is true that Mr. Rawls was not the collecting agent of the bank, nor the specially authorized agent *pro hac vice*, but the *bank*, by going against him for the money, has ratified the acts of Mr. Rawls, and thereby he has become their official or continuing agent, and liable as such; that is, liable only after default proven. It is true that one may be made an agent by ratification. Let it be conceded that the *bank*, by pursuing him for the money instead of asserting their right to the judgments, has made him their agent. Yet what kind of agent? Clearly not their trustee, their continuing agent, as is their Cashier. If so, our learned brother is right, for such agents are not liable but after demand and default. The ratification was co-extensive with the act done. It made Mr. Rawls an agent only *pro hac vice*—a special agent. I concede, for the sake of the argument, that he is made the special agent of the bank by ratification to receive this money. Clearly the ratification could extend his agency no farther—it could give him no other character than that which he had assumed. To ratify, is to adopt and affirm *the act* of another, done without authority. Now, as their special agent—an agent *pro hac vice*— what are the terms of his liability? The money which he has received is the money of his principal, which he is bound to pay over, when he receives it, *without demand*. In such a case the law creates against him an immediate liability. 1 *Chitty's Plead.* 329, *new edition*, 1840. *Dale vs. Burch*, 3 *Camp.* 347. *Brewster vs. Van Ness*, 18 *Johns. Rep.* 133. 1 *Wend.* 534. *Buckner vs. Patterson, Litt. Sel. Cases*, 234. *Cam. & Norw. R.* 92. 1 *Saund. R.* 33, *n.*2. 1 *Har. & Gill.* 439. *Nicholson vs. Knowles*, 5 *Madd.* 47. *Collins vs. Benning*, 12 *Mod.* 444. *Lellie vs. Hoyt*, 5 *Hill's N. Y. R.* 395. *Paley on Agency*, 58, 59. 15 *John. R.* 39. 4 *Yerg.* 188. *Estes vs. Stokes*, 2 *Richardson's R.* 133. Upon the doctrine of ratification, therefore, we think it was not necessary in this case for the plaintiff to prove that the defendant had not accounted for or paid the money; but I am not satisfied that the doctrines of agency and ratification have any thing to do with this case.

[2.] If Rawls had no authority to sell these judgments and receive the money, the sale was tortious. (In justice to a very excellent man, now deceased, let me be understood as speaking without reference to the merits and as implying no censure.) It

was the wrongful conversion of the property of the bank.   Now, what is the rule in such cases?   The plaintiff may waive the tort and proceed in assumpsit for the money.   That is precisely what the plaintiffs have done in this case—no more and no less.  2 *Greenleaf's Evid. p.* 98, 99, §117.   *Chitty on Contracts,* 23, 24, *note* 1. 1 *Hill's N. Y. R.* 240, *and note a.*  3 *Idem,* 282, '3, *note a.*  1 *Stephens' N. P.* 285, '6, 346, *new edit.* 1846.  2 *Phill. Evid.* 110, 111.  5 *Hill's N. Y. R.* 583, '4.  8 *Bing.* 43.  1 *Taunt.* 112.  3 *M. & S.* 191.  2 *Gill. & Johns.* 326.  1 *Hall,* 56.  10 *Mass.* 436, *n. b.*  4 *Pick.* 449.  5 *Idem,* 285.  1 *Miss.* 430.  4 *Gilman,* 406. So that we think the Court erred on this point.

[3.] The defendant introduced in evidence the books of the bank, (the plaintiff,) and then proposed to prove that they were not fairly kept, by showing erasures, or leaves torn out, &c.  The Court permitted him thus to attack the books, and that is another ground of exception.   *Official registers,* (and to this class belong the books which contain  the official proceedings of corporations and matters respecting their property.   See 1 *Greenleaf,* §484. 2 *Stra.* 954.  3 *B. & Ald.* 144.  5 *Wheat.* 420,) being required by law to be kept, and because the entries in them are of public interest, and because they are made under the sanction of official oath or duty, are recognized by law and are evidence in certain cases.

These books belong to a particular custody—to the officers of the bank in this case—and when they are proven to  come from the *proper repository,* they are received as evidence without farther proof.  1 *Greenleaf's Evid.* §485.  1 *Starkie's Evid.* 202. 2 *Anstr.* 387.  4 *Price,* 216.  3 *Taunt.* 91.  1 *Greenleaf's Evid.* §142.

The books in this case were the books of the plaintiff, produced, I conclude, under a notice, and proven to come from the proper repository.   They were, therefore, properly before the Court and rightfully proven to be the books of the bank.   We hold that the defendant having introduced them,  could not attack  them  by proof that they are not the books of the bank, and thus discredit them as a whole, but that it was competent to show errors in particular items; that is, it was competent to show mistakes or frauds in the entries, and thereby disprove facts which the books, on their face,  purport to prove.   If one introduces a witness, he cannot discredit him generally, but he may prove the truth of a

Merchants' Bank of Macon *vs*. Rawls and Taylor.

particular fact, in direct contradiction to what his witness has testified. 1 *Greenleaf's Evid*. §§442, 443. This principle is applicable to these books. We find no error in this assignment.

The Court instructed the Jury, that if they found the books not fairly kept, and should find entries improperly erased, or leaves torn out, they might disregard the books, and in that event ought to find for the defendant. To these instructions the plaintiffs excepted. It is not denied but that it was the province of the Jury to determine whether the books were fairly kept. The objection lies to the instruction, that if they did find them unfairly kept, that then their verdict *ought to be for the defendant*. There was evidence before the Jury besides the books.

The plaintiff had proved by other testimony, that the defendant had sold the judgments and received the money. The effect of the charge was, an instruction to the Jury to disregard that testimony. Upon the principles previously ruled by the Court, he was right. The books were the only testimony relied on by the plaintiff to show that the defendant had not accounted for or paid over the money. The Court had previously ruled, that plaintiffs could not sustain their action without proving this. Rightly enough, therefore, if the books were to be disregarded, the Jury must find for the defendant, for in that event the plaintiffs' action was not made out. But upon our view of the case, it was only necessary for the plaintiffs to prove their right to the money, and the possession of it by defendant. The case was, therefore, made out by testimony independent of the books. Upon our principles the charge of the Court was erroneous.

[4.] When the verdict of the Jury was brought into Court, and the papers handed to the counsel for the plaintiffs, without reading out the verdict, he moved the Court for leave to dismiss the action, which the Court refused, and thereupon the plaintiffs excepted. It is contended by the plaintiffs, that a party plaintiff has the right to dismiss his suit in all cases before the finding of the Jury becomes a verdict, and that it is not a verdict until it is received and recorded. We concede, that for certain purposes, the finding is not a verdict until it is recorded. The Jury may themselves alter their finding; the Court may direct them to be examined by the poll, and they may, for certain causes, be sent back to reconsider of their finding. The question here is, can the party evade the effect of the verdict by being nonsuit, after

the Jury have returned it into Court.    That the authorities are somewhat in conflict upon this subject we admit.    Precisely such a case was determined in South Carolina, in favor of the right to dismiss.    1 *Bailey's R.* 262.    The rule on this subject is more one of expediency than of principle.    We believe that the ends of justice, and equality of right and privilege between parties, will be best promoted by the following rule, to wit : *a party shall not dismiss or be nonsuit in any case, after the publication of the verdict, and it shall be considered as published, eo instanti, in which it is handed to the plaintiff's counsel or other person directed by the Court to receive it.*    The decision of the Court below falls within this rule.

Let the judgment below be reversed, and a new trial had in accordance with this opinion.