# Charleston.

## GEORGE P. THOMPSON vs. ELIZABETH THOMPSON.

### January Term, 1872.

E. T. brings assumpsit against G. T. On the trial it is proved that F. T. was the business agent of E. T., to hire out slaves, &c. In the years 1855-6-7, he hired a slave to one Turner, and took bonds payable to himself for the hire thereof. Subsequently F. T. died, and G. T. became his administrator, who collected the bonds for the hire of the slave to Turner, and as such administrator accounted for the same to the estate of F. T., and disbursed the amount in the settlement thereof. It was further proved that when G. T. collected the money on the bonds, he was told by Turner that they were given for the hire of plaintiff's slave; which defendant, G. T., also admitted that he knew, on the trial. This amount was one of the items in the bill of particulars; whereupon the defendant moved the court to instruct the jury, "If the jury are satisfied that the bonds of Turner paid after his death to defendant, as administrator of Francis Thompson, were made payable to said Francis Thompson, the legal title of said bonds were in said F. Thompson, although the negro woman, for the hire of which the bonds were given, belonged to the plaintiff, and that her title to said bonds, being equitable only, are not recoverable in this action," which the court refused to give, and he excepted. HELD:

    I. The plaintiff was proceeding under the common counts for money had and received, not for the bonds nor title thereto, but for the money that resulted from the hire of her slave; and it made no difference whether her title to the money was legal or equitable, if she had title thereto, she could recover under this action.

    II. It was immaterial how the agent secured the payment of the money; it was plaintiff's money, and whoever collected it and retained it, knowing the facts, would be liable, and this action would lie to recover it.

    III. The action of assumpsit is a liberal and equitable one. It is applicable to almost every case where money has been received which in equity and good conscience ought to be refunded.

Action of assumpsit in the circuit court of Kanawha county; declaration filed at May rules, 1869. Judgment for plaintiff at June term, 1870.

The only point determined in this court arose on the instructions asked by the defendant, which the court refused to give (except the refusal of the court to grant a new trial

because the verdict was contrary to the evidence), and is amply stated in the opinion of Moore, J.

*Smith & Knight* for plaintiff in error.
*Miller* and *Mollohan & Nash* for defendant in error.

MOORE, J. This was an action of trespass on the case in assumpsit. The declaration consists of the common counts, and a special count on a lease. The account filed with the declaration states distinctly the several items of the plaintiff's claim; two of the items are stated as follows, viz:

"To amount received from January, 1865, to January, 1869, on account of Elizabeth H. Thompson's proportion of the proceeds of the sale of certain lands, made to Benjamin S. Thompson by George S. Patton, special commissioner, on the 15th of September, 1856, under decrees rendered by the county court of Kanawha county, in the cause of *Thompson and others* vs. *Thompson and others*, four hundred and fifty dollars."

"To amount received by George P. Thompson, of Helena M. Turner, in the year 1867, for the use of said Elizabeth H. Thompson, being for the hire of a negro woman belonging to said Elizabeth H. Thompson, one hundred and sixty-five dollars and sixty cents."

The defendant pleaded non-assumpsit, payment and set-offs. Issues joined. Upon the trial it appears from the bill of exceptions setting out the facts proved, that the plaintiff, among other facts, proved that Francis Thompson, deceased, was the agent of the plaintiff in the years 1854–5–6–7–8–9 and 1860, to hire out her negroes, lease her farm and transact other business for her; that in the years 1855, 1856 and 1857, said Francis Thompson, as such agent, hired a negro woman, belonging to the plaintiff, to John P. Turner, and took bonds from said Turner in each case of hiring, in his own name, payable to himself; that after the death of said F. Thompson, the defendant, G. P. Thompson, as administrator of said Francis Thompson's estate, collected from Turner's estate the amount of the said bonds, and as such administrator, accounted for the same to the estate of said F. Thompson, and disbursed the amount so collected in the settlement of said Thompson's estate. It was also proved that when the defendant collected this money on the bonds aforesaid, he was told

by Turner that they were for the hire of a negro woman belonging to plaintiff. And defendant admitted at the trial that he knew the bonds were for the hire of plaintiff's negro woman.

The defendant asked the court to give the following instruction to the jury, viz: "If the jury are satisfied that the bonds of Turner, paid after his death to defendant, as administrator of Francis Thompson, were made payable to said Francis Thompson, the legal title of said bonds were in said F. Thompson, although the negro woman, for the hire of which the bonds were given, belonged to the plaintiff, and that her title to said bonds, being equitable only, are not recoverable in this action." The court refused to give the instruction asked for, but offered to give it with this addition, viz: "But the money collected on said bonds, if it appear she had the legal right to the same, she can recover in this action." As it does not appear that the court gave the instruction with the addendum, but merely offered to do so, although the record states that the defendant excepted to the "opinion of the court refusing the instruction, as well as the addition thereto," it is not our province now to settle the point whether the instruction with the addendum would have been proper or not in this action. The question is, did the court err in refusing the instruction asked for by the defendant? From the tenor of the instruction asked for, the defendant seemed to act on the hypothesis that the plaintiff was suing to recover the title to the bonds; that certainly is the inference from the language used, and must have been so interpreted by the court when the learned judge refused to give it, unless amended as proposed by him. She was proceeding under the common count for money had and received, not for the bonds nor title thereto, but for the money that resulted from the hire of her negro woman; and it made no difference whether her title to the money was legal or equitable, if she had title thereto she could recover under this action. The mere fact that her agent had taken from Turner, bonds payable to himself for the hire-money, did not divest her of the right and title to the money, when received by him. Suppose Francis Thompson had collected the money and surrendered the bonds to the obligor in his life-time, certainly it will not be denied

that the plaintiff could have recovered from him in assumpsit for money had and received for her use and benefit. It was immaterial how he secured the payment of the money, it was her money and whoever collected it and retained it, knowing the facts, would be liable, and this action would lie to recover it. The action is a liberal and equitable one. In the case of *Eddy* vs. *Smith*, 13 Wendell, 490, Judge Nelson said : "The principles of this action are liberal, beyond that of any other known to the practice of the courts." "It lies," says Mr. J. Blackstone, "when one has received money belonging to another, without any valuable consideration given on the receiver's part; for the law construes this to be money had and received for the use of the owner only, and implies that the person so receiving promised and undertook to account for it to the true proprietor. And it is applicable to almost every case where a person has received money which, in equity and good conscience, he ought to refund. The action is equally beneficial to the defendant, because the *defense to the claim*, as well as the claim itself, is governed by the above principles. Lord Mansfield has said in *Moses* vs. *Macfarlan*, 2 Burr., 1010, "It is the most favorable way in which he can be sued; he can be liable no further than the money he has received; and against that may go into every equitable defense upon the general issue; he may claim every equitable allowance, &c.; in short, he may defend himself by everything which shows that the plaintiff *ex aequo et bono* is not entitled to the whole of his demand, or any part of it."

In the case of *Newsum* vs. *Newsum*, 1 Leigh, 86, the court held that the administrator, who sold a slave whereof his intestate died possessed, but which in truth belonged of right to another, and applied the proceeds to the payment of his intestate's debts in due course of administration, without any notice of the right or claim of the true owner, he was personally liable to the true owner for the value, in trover brought by the owner against him. There can be no doubt that the plaintiff, in that case, might have waived the tort and brought an action of *indebitatus assumpsit* for the money received by the wrong-doer. *Osborn* vs. *Bell*, 5 Den., 370; *Estwick* vs. *Hugg*, 1 Dall., 222. And if he had done so, the case would have been not only similar to the one now under con-

sideration, but of greater hardship; for there the defendant· had no notice of the plaintiff's right, and acted in the honest belief that the property belonged to the estate he was administering. It seems to me the court did not err in refusing the· instruction asked for, and there is not that necessity for resorting to the forum of equity indicated by the appellant; nor do I think the principles elucidated in the case of *Brooks* vs. *Hatch,* 6 Leigh, 534, applicable to this. And whilst I agree with the learned judge Tucker in the concluding paragraph of his opinion in the case, that "Much has been said of the invasions of common law jurisdiction by courts of equity; but the mischief will not be less if we suffer the common law courts to trench upon the courts of equity, and to introduce· all the refinements and complexities of the latter in a trial. before a jury;" yet I am not willing to depart from the well-defined landmarks of the fathers of our jurisprudence, which. have been so closely followed by the ablest jurists both of England and America, and compel the plaintiff to abandon this action, either because it apparently trenches upon equity jurisdiction, or because other parties, heirs and distributees are interested in the result of the suit, and cannot be heard in it. The plaintiff has elected to take this action against the defendant personally, and although it simply settles the litigation between her and the defendant, yet it is her prerogative to make the election and take the risk.

To the defendant the action affords a complete defense. Courts of equity could not give him greater latitude. If he failed in the trial to avail himself of all his grounds of defense, the fault was with himself, and not in the technicalities of law governing this form of action.

The defendant also asked the court to grant him a new trial because the verdict was contrary to the evidence, &c., but the court refused a new trial, to which opinion defendant excepted. It seems to me the evidence, so far as the record shows, justified the jury in finding the verdict they did, and the court did right in refusing the new trial. The judgment. should be affirmed with costs and damages.

The other judges concurred.

JUDGMENT AFFIRMED.