## CHARLESTON.

VanWinkle *v.* Blackford, Administrator.

Submitted September 10, 1886.—Decided October 23, 1886.

1. If on the record-book a memorandum is made of exceptions taken by the plaintiff to the rulings and decisions of the court, one of which is an exception to an instruction given to the

jury, and the other an exception to the refusal of the court to award a new trial, in which the evidence is all certified, upon a a writ of error this Court will review the rulings and decisions. of the court, though the objection to the refusal of the court to award a new trial was not entered on the face of the record-book except by the noting of these exceptions and making them thus a part of the record, and these showing on their face, that these rulings and decisions of the court including the refusal to grant a new trial were objected to by the plaintiff.     (p. 679.)

2. A plea in abatement of an action of *assumpsit* brought by a creditor against a personal representative, that a legatee of the decedent had under the statute (§ 8 ch. 87 of Warth's Code) required the defendant, a personal representative, to make an *ex parte* settlement of his account, and that the proceedings to compel such *ex parte* settlement were still pending, when this suit was brought, is bad on demurrer.     (p. 680.)

3. A court ought not to allow a defendant in an action of *assumpsit* to file a special plea, when it is objected to and is simply a denial, that the plaintiff ever had any cause of action ; such defence should be made under the general issue of *non assumpsit*. (p. 681.)

4. This Court will presume, that the plaintiff is injured by the refusal of the court to permit a proper replication to be filed, unless it affirmatively appears by the record, that no injury could have been sustained by the plaintiff, as on the trial he had been permitted to introduce all his evidence to prove all the facts stated in this rejected replication, all of which evidence was properly admissible under the pleadings in the case exclusive of this special replication rejected.     (p. 684.)

5. The city of Parkersburg by statute was authorized to borrow $50,000.00 to pay its subscription to the North Western Virginia Railroad Company ; and to effect this it passed an ordinance on October 29, 1855, whereby bonds were to be issued and negotiated by the trustees of the sinking fund of said city consisting of two persons, appointed by and removable for cause by the council of said city, and the mayor of said city for the time being. One of these trustees was to be appointed the treasurer, and as such give to a bond and security.   It was made the duty of these trustees to negotiate these bonds and see to the punctual payment of the interest on them as well as the principal, as they might fall due ; and to this end certain of the taxes and resources of the said city were to go into the hands of the said trustees, who were authorized among other things to loan temporarily on good personal security any sum less than $500.00 remaining in their hands, sums exceeding that amount being required by the ordinance to be spent in the purchase of these bonds of the city

of Parkersburg or bonds or stock of the State of Virginia. On November 2, 1870, the trustees of this sinking fund were P. G. VanWinkle, W. N. Chancellor and C. H. Smith, the mayor, and P. G. VanWinkle was their treasurer. These trustees loaned to P. G. VanWinkle with W. W. VanWinkle as his surety $734.57 ; and they signed and sealed a bond, whereby they and each of them bound themselves to pay the trustees of the sinking fund (of Parkersburg, W. Va.) $734.57 with interest from date on or before May 1, 1871. This bond is in its legal effect a bond to the three individuals, P. G. VanWinkle, W. N. Chancellor and C. H. Smith, though they were not named as obligees on the face of this bond, the description on the bond "trustees of the sinking fund (of Parkersburg, W. Va.)" being regarded as a *descriptio personis* and as meaning those individuals, who, when this bond was executed, were the trustees of the sinking fund of Parkersburg. (p. 686.)

6. The principal obligor in this bond being P. G. VanWinkle, and he being also at the time not only one of the obligees as one of the trustees, but also treasurer of these trustees, this bond in point of fact when signed and sealed by the obligors remained in the possession and control of the principal obligor undelivered to any one till his death some eighteen months afterwards, and it then passed into the hands of his personal representative, who was W. W. VanWinkle, the other obligor in this bond, and he handed this bond with the other assets of said trustees to one of them. Held :

This bond never having been delivered by the obligors to the obligees was inoperative and void as a bond and imposed no obligation either legal or equitable on either of the obligors in the bond; and the security in the bond, W. W. Van Winkle having after the death of the principal paid the bond to the person, who had been appointed such treasurer of these trustees, after he had ceased to be the administrator of the principal, P. W. VanWinkle, is not entitled in an action of *assumpsit* to recover the amount so paid from the administrator *de bonis non* of P. G. VanWinkle. (p. 687.)

*W. N. Miller* and *B. M. Ambler* for plaintiff in error.

*T. O. Bullock* and *R. H. Smith* for defendant in error.

Statement of the case by Green, Judge :

This was an action of *assumpsit* brought in the circuit court of Wood county by W. W. VanWinkle against G. L. Blackford, administrator *de bonis non* with the will annexed of Peter G. VanWinkle, deceased. The facts, upon which this suit was based, as appears from the evidence

before the jury on its trial, were as follows: The city of Parkersburg subscribed $50,000.00 to the stock of the North-Western Virginia Railroad Company, and by an ordinance of the said city passed October 29, 1855, bonds to that amount were issued payable in twenty years, the interest being payable annually. These bonds were placed for registration in the hands of the trustees of the sinking fund consisting of three persons, two of whom were appointed and removable for cause by the council of the city of Parkersburg, and the president of the city council for the time being was the third. If these bonds were sold for more than $50,000.00 the residue was to be retained by the trustees of the sinking fund as a part of the sinking fund; they were out of the sinking fund to provide for the payment of the interest on these city-bonds punctually each year and pay the bonds as they should become due; and whenever they might have in their hands $500.00 or more of money after paying this interest, they were to invest it in the purchase for the city of these city-bonds, if they could be bought below par, or, if that could not be done, bonds or stock of the State of Virginia; and any sum less than $500.00 they might temporarily loan for not more than six months on bonds with good personal security; and they were authorized to borrow on the credit of the sinking fund any sums of money not exceeding in the aggregate at any time $1,500.00. The sinking fund was to consist first of the $50,000.00 of the stock of said Railroad Company, the dividends on which they were to collect, and they were authorized in a specified way and in a manner provided for to sell this stock adding the proceeds to the sinking fund; secondly, all proceeds of wharfage rates of said town, which were to be paid over to them, and one fifth of the taxes collected by the city of its inhabitants; and lastly, such appropriations from the general funds of the town, as the city-council should from time to time make.

These trustees were to appoint one of their own number treasurer, who was to have the custody of the fund and to give bond with approved security to account for the same, and to make a report to the city-council at the end of each year. On November 2, 1870, C. W. Shattuck, the mayor, P. G. VanWinkle and W. N. Chancellor were the

trustees of this sinking fund, and P. G. VanWinkle was the treasurer.   P. G. VanWinkle continued to be one of these trustees and such treasurer until his death April 15, 1872. He had been one of these trustees ever since. May 6, 1859. W. N. Chancellor, who was appointed a trustee May 6, 1870, continued to be such trustee till the trial of this suit; he was appointed treasurer on the death of P. G. VanWinkle. The plaintiff, W. W. VanWinkle, was appointed a trustee in 1881.

On November 2, 1870, the trustees, Shattuck, Chancellor, and P. G. VanWinkle lent to one of their number, P. G. VanWinkle, $734.57 and took from him a bond with the plaintiff as his security.

This bond was in the words and figures following :

"$734.57.

"On or before the first day of May next we or either of us promise and bind ourselves our heirs, &c., to pay the trustees of the sinking fund (of Parkersburg, W. Va.) seven hundred and thirty four dollars and fifty seven cents for value received, with interest from date.   Witness the following signatures and seals this 2nd day of November, 1870.

"P. G. VANWINKLE,   [SEAL.]
"W. W. VANWINKLE. [SEAL.]"

P. G. Van Winkle was not only a trustee of the sinking fund but its treasurer also, when this loan was made to him. He paid nothing on this bond in his lifetime, and on his death April 15, 1872, the plaintiff, W. W. VanWinkle, was appointed his administrator with the will annexed.   This bond was then in a box in the custody of P. G. VanWinkle, treasurer, with other assets belonging to said sinking fund amounting in all to $35,000.00, distinct from P. G. Van Winkle's individual property.   The plaintiff, W. W. Van Winkle, having as administrator, &c., of P. G. VanWinkle got possession of this box turned it over to W. N. Chancellor, who upon the death of P. G. VanWinkle became treasurer of the sinking fund, and as administrator of P. G. Van Winkle, the plaintiff on July 11, 1878, paid to W. N. Chancellor, treasurer, $57.72, and on July 18, 1881, the further sum of $850.00, which sums were as directed credited on said bond, leaving a balance due upon it of about $306.06.   In

January 1884 this bond was taken up by W. W. VanWinkle, the surety, by giving his own individual note for it with security.   On the 24th day of April, 1883, the powers of the plaintiff as administrator of P. G. VanWinkle were revoked, and Godwin L. Blackford, the defendant, was appointed and qualified as admistrator *de bonis non* with the will annexed of P. G. VanWinkle.

This action of *assumpsit* was brought against Blackford as such administrator by the plaintiff to recover back this $306.06, which he claimed to have paid as the security of P. G. VanWinkle on this bond, the payment being by this substitution of his own note with security for it.   The declaration consisted of the common counts in *assumpsit* including all the money counts and among them a count for money paid by the plaintiff for P. G. VanWinkle in his lifetime at his request.   The other counts set out the facts in detail substantially as above stated, except that he states, that on the 1st day of May, 1881, (just ten years after this bond became due) he paid assurety for P. G. VanWinkle the balance due $1,197.34, and that there was repaid by him as administrator to himself individually on July 18, 1881, $850.00 leaving a balance due him of $306.06, which Godwin L. Blackford the administrator *de bonis non c. t. a.* of P. G. VanWinkle wholly refused to pay him. There was filed with this declaration the following bill of particulars:

"May 1st, 1881.—To amount paid as surety for and on behalf of said decedent on his note for the sum of $734.57, dated November 2, 1870, payable on or before the 1st day of May next, 1871, to the trustees of the sinking fund of Parkersburg, $306.06."

The first summons in this case was returnable to June rules, 1884, and a plea of abatement was filed, on the ground that it was not properly served, and a motion was also made to quash it, and the court did quash it, and another summons was issued, which was served in person on the defendant, and another plea in abatement was filed in proper time and duly sworn to.   The sole ground and substance of this plea is thus stated in its conclusion: that "on the 8th day of January, 1883, before the issuing of the said writ in

this cause, a proceeding was begun by Mary V. Blackford, a devisee and legatee of said Peter G. Van Winkle, deceased, under his last will and testament, against the said plaintiff before the then commissioner of accounts of said Wood county, under the statute of said State and subject to the jurisdiction, supervision and control of the county court of said county, to compel and require the said plaintiff to render an account of his administration of the estate of said Peter G. Van Winkle, deceased, since the date of his quali- fication as such fiduciary, as by the records and proceedings therein in said county court of said Wood county fully ap- pear.

"And the said defendant further says that said former pro- ceeding, so begun by said Mary V. Blackford against the plaintiff as aforesaid, is still pending in said county court of said Wood county; and this the said defendant is ready to verify."

This plea was demurred to by the plaintiff and the de- murrer sustained.   The defendant demurred to the declara- tion, which demurrer was overruled, and he pleaded *non assumpsit* and the statute of limitations of five years, which pleas were replied to generally, and issue was joined.   The defendant also made the following special plea:

"And the said defendant, administrator as aforesaid, for further plea says, that the said plaintiff ought not to have or maintain his aforesaid action thereof against him, because, he says, that the said plaintiff did not make the said sup- posed payment of money, or any part thereof, in manner and form as he hath alleged in his said declaration and bill of par- ticulars filed therewith as surety for and on behalf of said decedent, P. G. Van Winkle, on the said writing obligatory in said declaration and bill of particulars mentioned, within ten years next after the right of action accrued on said writ- ing obligatory against the obligors therein, to-wit, the said decedent and the said plaintiff, his surety; and this the said defendant is ready to verify."

To this special plea the defendant tendered two special re- plications, which the court refused to permit him to file; and he then replied generally to said special plea, and issue was joined upon it.   The jury found a verdict for the defendant;

and the plaintiff moved the court for a new trial, because the verdict was contrary to the law and the evidence. The court overruled the motion for a new trial and rendered on December 21, 1885, a judgment for the defendant against the plaintiff for his costs. A bill of exceptions was taken to the refusal of the court to permit the defendant to file his special replications to the plaintiff's special plea, which special replications are set out in the bills of exceptions. I deem it sufficient to state briefly the substance of these two special replications. The first of them states, that P. G. Van Winkle as treasurer of said sinking fund was on November 2, 1870, a defaulter by reason of his having appropriated to his own use the $734.57, and to secure it this bond of $734.57 was executed by him with the plaintiff, W. W. VanWinkle, as his surety. And the plaintiff on May 1, 1881, well knowing that this $306.06 was justly and honestly due as a balance on said bond, and that no defence could be made, that would prevent the payment thereof, agreed with the trustees of said sinking fund to pay off this balance, and he did accordingly pay it off on January 4, 1884. The second replication in substance is like the first, except that this promise to pay the amount still due on said bond of $734.57 to the trustees of said sinking fund was alleged to have been made to said trustees of said sinking fund on May 1, 1881, within ten years after said bond became due by W. W. VanWinkle, as administrator of P. G. VanWinkle, the principal in said bond, the payment to be made out of assets of the estate of P. G. VanWinkle, when the same should be received. The ordinances of the city-council of Parkersburg are made a part of each of these special replications.

An instruction was given to the jury during the trial of this cause, to which the plaintiff excepted. This instruction was asked by the defendant, after all the evidence had been given, and before the jury retired. The instruction asked as shown by the bill of exceptions was as follows:

"The jury are instructed that liability, if any, on the note mentioned in the plaintiff's declaration and bill of particulars, executed by P. G. Van Winkle and W. W. Van Winkle, his surety, to the sinking fund of Parkersburg ceased after the expiration of ten years after May 1, 1871—that is to say,

after May 1, 1881; and if they believe from the evidence
that W. W. Van Winkle, as surety on said note for P. G.
Van Winkle and plaintiff in this action, made the payment
of money sued for, being the balance due on said note after
crediting the payments theretofore made on the same after
said May 1, 1881, then he is not entitled to recover in this
action, and they must find for the defendant; and it will not
avail the plaintiff any, that before the expiration of said ten
years he as administrator or surety agreed or promised
orally to pay or assumed payment of the same without
actual payment thereof."

To the giving of which instruction the plaintiff by counsel
objected, and the court in lieu of the said instruction gave
the following:

"The jury are instructed that no acknowledgment or
promise by any personal representative of a decedent shall
charge the estate of such decedent in any case in which the
decedent's estate could have been protected under the sixth
section, chapter 102, Acts of 1882, but for such acknowledg-
ment or promise; and if the jury believe from the evidence
in this cause that at the time of the payment by the plaintiff
of the debt referred to in the declaration the said debt was
barred by the statute of limitations, although he as admin-
istrator of P. G. Van Winkle, deceased, made an oral ac-
knowledgment or promise to pay said debt, while he was
such administrator, and before the same was barred, then
such promise or acknowledgment by the plaintiff was not
binding on the estate of P. G. Van Winkle, deceased, and
they must find for the defendant in this action upon the issue
joined upon the plea of the statute of limitations."

To the giving of this last instruction the plaintiff by coun-
sel objected, but the court overruled the objection and gave
the same, and a bill of exceptions was taken by the plaintiff.
A bill of exceptions was also taken to the refusal of the court
to grant a new trial to the plaintiff; and this bill of exceptions
set out all the evidence given on the trial. It proved the
facts above stated; and in addition thereto it was proved,
that W. W. Van Winkle both as the administrator of the
principal P. G. Van Winkle and in his individual capacity
verbally promised to pay the balance due on said bond of

$734.57, but whether he made said promise before or after
the 1st of May, 1881, when said bond became barred by the
statute of limitations, that being ten years after it became
due, was a subject of controversy, and the weight of the
evidence shows beyond reasonable doubt, that such verbal
promises were made by W. W. VanWinkle as administrator
of P. G. VanWinkle prior to May 1, 1881, the promise be-
ing to pay the balance due on this bond out of the assets
of the estate, when they came into his hands as administrator.
But the weight of the evidence does not satisfactorily show,
that any such verbal promise was made by W. W. Van
Winkle to pay the balance due on this bond personally till
after May 1, 1881.   He never either as administrator of P.
G. Van Winkle nor personally promised in writing to pay
the balance due upon this bond.

From the judgment of the circuit court of Wood rendered
on the 21st of December, 1885, the plaintiff has obtained a
writ of error and *supersedeas.*

Opinion by GREEN, JUDGE:

It has been urged, that this Court can not review the sup-
posed errors of the court below in its rulings during the trial
of this case; for, though the rulings were objected to when
made, and the point saved, and a bill of exceptions taken
showing these rulings during the term of the court, and a
new trial was asked of the court below and refused during
the term of the court, and such refusal was objected to in the
court below, and though all this appears of record, as it
must do to justify us in reconsidering these rulings according
to the case of *Danks* v. *Rodeheaver et al.*, 26 W. Va. 274, it
is insisted, as the entry on the record-book does not expressly
state in terms, that the plaintiff objected to the refusal of the
court below to award him a new trial, that according to this
decision in 26 W. Va. these rulings of the court below dur-
ing the trial can not be reviewed by this Court.   There is
nothing in this position.   It is in effect and, in view of our
decisions we might say, expressly noted on the record-book
of the court below, that the plaintiff did object to the over-
ruling of the court below of his motion for new a trial.   The
entry of December 31, 1885, is in these words :   " Be it re-

membered that upon the trial of this cause the plaintiff by counsel tendered three bills of exception to the rulings and decisions of the court, numbered respectively Nos. 1, 2 and 3, and prays that the same may be signed, sealed and saved to him and made part of the record in this action, which is accordingly done." The bill of exceptions No. 2 referred to and thus made a part of the record expressly states, that " the plaintiff moved the court to set aside the verdict and grant him a new trial, on the ground that the verdict was contrary to the law and the evidence;" and after setting out at length all the evidence it concludes by saying, that " said motion was overruled and judgment was entered on said verdict, to which opinion of the court overruling said motion and entering up judgment on said verdict, the plaintiff by his counsel excepted and his exception is ordered to be made a part of the record in this case." This is precisely the same as if this objection to the overruling of this motion for a new trial as well as everything else set out in these bills of exceptions had been formally spread on the face of the record-book, and under the decision in *Danks* v. *Rodeheaver* we may properly review the rulings of the court below in the trial of this case.

Before considering these rulings we will consider briefly the pleadings in the case. After the return on the first summons had been quashed, and an *alias* summons issued, there was filed at the proper time a plea in abatement, which on general demurrer the court held insufficient in law. The court obviously did not err in this, as this plea was, as I understand it, though very badly pleaded, that a legatee under the will of the defendant's testator had under the statute (§8 ch. 87 Warth's Am. Code.) required the defendant as administrator *de bonis non* with the will annexed of Peter G. VanWinkle to make an *ex parte* settlement of his accounts as such personal representative, which proceedings to compel this settlement were pending, when this suit was brought, and were still pending. This obviously furnished no ground for abating any suit against a personal representative. It can not possibly have any effect whatever on such suit. I confess, that I am unable to conceive, why the defendant's counsel put in such a plea. It has not been insisted on as a good plea in this Court.

The defendant also filed a special plea, which amounted to this, that the plaintiff had not paid for the use of the defendant the money, which he claimed to have paid as the surety of the defendant's testator on a bond, till after *ten* years had elapsed, since said bond became due, that is, that when the plaintiff paid the money he claimed to have paid as the surety of the defendant's testator, he did so voluntarily and not at the defendant's instance or request or for his use, as the plaintiff, when he made this payment, could not have been enforced to do so, as the bond, on which he made this payment, could not have been then enforced against him, being then barred by the statute of limitations, which provides that every action to recover money, which is founded upon any contract in writing, under seal executed on or after April 1, 1869, shall be brought, within ten years next after the right to bring the same shall have first accrued. This plea amounted to an allegation, that the payment, the, recovery of which was sought by the plaintiff, was a voluntary payment made by him neither at the request of the defendant nor for his use, as the bond, which, the plaintiff says, it was paid upon as the defendant's security, was, when this payment was made, barred by the statute of limitations and could not have been enforced by any action against either the plaintiff or the defendant.   Waiving any objection to the form of this special plea, this would clearly have been a good defence ; but still, if this special plea had been objected to by the plaintiff, it is clear, that the court ought not to have permitted it to be filed : for it is obvious, that the defence was in effect nothing but the plea of *non assumpsit.*   It was simply a denial of any obligation on the defendant to pay the balance on the bond or of any consideration enuring to the defendant or his testator's estate by the voluntary payment made by the plaintiff; and of course it denied, that there was any promise express or implied on the part of the defendant as administrator *d. b. n. c. t. a.* to repay him this money.

It may be, that, if the special plea admits, that the plaintiff once had a cause of action, but insists, that it has been discharged, such a special plea would be permitted to be filed, though such defence might be made under the gen-

eral issue of *non assumpsit;* but the authorities are agreed, that if the special plea is simply a denial, that the plaintiff ever had any cause of action, such defence should be made under the general issue of *non assumpsit,* and if the filing of such special plea is objected to by the plaintiff, the court ought not to allow it to be filed (*Merchants' and Mechanics' Bank of Wheeling* v. *Evans & Dorsey,* 9 W. Va. 373, pt. 4 of syll. and 382; *Hale* v. *The West Virginia Oil and Oil Land Co.,* 10 W.Va. 229 and 236, pt. 2 of syll; *First Nat'l Bank of Wellsburg* v. *Kimberlands,* 18 W. Va. 595–6). But in this case there was no objection to the filing of the special plea; it was replied to generally, after the court had rejected two special replications offered by the plaintiff. These replications could, it seems to me, have been properly rejected on account of the manner in which they were made. The replications, it seems to me, violated to such an extent the rules of pleading, as would have justified the court in rejecting them. Instead of the ordinance of the city of Parkersburg, which created the trustees of the sinking fund of Parkersburg, to whom the bond was given, which the plaintiff claimed to have paid as security for the defendant's testator, being properly pleaded, it being a material part of both these pleas, without stating the material contents of this ordinance in the first of these replications, it is simply said on this subject that "P. G. Van Winkle was duly appointed by the city of Parkersburg under and pursuant to an ordinance lawfully and duly passed by the mayor and council of said city on the 20th day of October, 1855, now presented and shown to the court," &c. Had the substance of this ordinance been set forth properly, we shall hereafter see, it would, when taken in connection with the other allegations in the first replication, have shown, that the plaintiff could not maintain the action. In the second replication this ordinance is still more defectively pleaded, it being referred to only as said ordinance named in the first replication. There were other serious objections to the manner of the pleading in each of these two replications, but we will waive them, it being unnecessary for us to decide, whether these errors in the mode of pleading rendered the replications so obscure and uncertain, as to justify the court in rejecting them.

But, if we look to these replications as explained by the subsequent evidence and arguments of counsel and treat them as properly made and as setting up the reply to the plea, which was relied upon, we can not see, that any injury has been sustained by the plaintiff by reason of their rejection by the court, even if the replications had been in law sufficient; for the plaintiff was permitted to prove all the facts stated in each of these replications on the trial before the jury, they being such facts, as, if they had constituted a sufficient replication to the defendant's special plea, were clearly admissible on the issue joined under the plea of *non assumpsit.* The replications attempted to be made on the special plea, it would seem, were, that, though more than ten years had elapsed, when the money was paid by the plaintiff as security on said bond of the defendant testator, yet as the personal representative of this testator had within the ten years made a *verbal* promise to pay this bond, when assets of his testator should come into his hands, this verbal promise made before the statute of limitations had barred the recovery of this bond kept the bond alive by removing the bar of the statute of limitations and continued the liability of the personal representative of the principal obligor in said bond, so that, when it was paid after the expiration of said ten years by the plaintiff, such payment was for the use of the defendant, the personal representative of the principal obligor, relieving him from an existing liability on said bond, which could have been enforced against him by suit, though more than ten years had elapsed since it became due, because this verbal promise made before the lapse of the ten years removed the bar of the statute of limitations. The other ground attempted to be assumed in these replications was, that the principal obligor in this bond, the testator of the defendant, had given the bond to cover a balance in his hands due the trustees of said sinking fund, which as treasurer he held as a fiduciary and used for his own purposes in violation of his trust; and therefore an action would lie after ten years had elapsed to enforce such liability, and it having been paid, though after the ten years had elapsed, by the plaintiff as the surety of the defendant's testator in this bond, he had a right of action to recover back this money.

If we were to admit these replications to have been suffi-
cient in law, yet their rejection by the court did not preju-
dice the plaintiff, as all the facts alleged in them, admitting
they were sufficient in law, could obviously have been just
as properly proven under the issue joined on the plea of *non
assumpsit*; and under this plea it is obvious from the evidence,
all of which is certified, that the plaintiff was permitted to
introduce all his evidence without objection to establish the
facts alleged in the replications.    The whole argument of the
counsel for the plaintiff in error before this Court, which is
very elaborate, has been an effort to satisfy this Court, that
all the facts alleged in these special replications were fully
proven before the jury, and that because of those facts the
plaintiff was entitled to recover.    This Court in the *First
National Bank of Wellsburg* v. *Kimberlands*, 16 W. Va. 557,
pt. 20 of Syll. decided "that this Court will presume, that the
plaintiff is injured by the court's permitting an improper
plea to be filed, after objection is made to it, unless it affirm-
atively appears by the record, that no injury could have
been sustained by the plaintiff." To this we may add, that,
if it does appear affirmatively by the record, that no injury
could have been sustained by the plaintiff by the improper re-
jection of a replication, the court will not reverse a judgment
simply because of the rejection of such replication.    The
presumption in such case would be, that the plaintiff had
suffered injury, but this might be rebutted, if this Court had
before it all the evidence, and it plainly appears, that under
the pleadings actually in the case all the evidence was intro-
duced properly, which could have been introduced, if the
plaintiff's replication had not been rejected.    On this subject
in delivering the opinion of the court in *First National Bank
of Wellsburg* v. *Kimberlands*, 16 W. Va. 596–7, I said :

"In the case of *Hopkins* v. *Richardson*, 9 Gratt. 488, it
was decided that 'the admission of an improper plea is error,
and the Appellate Court will not inquire, whether, or not
the plaintiff could be injured by its admission.' Judge Lee
says in that case : 'Nor is it any answer to this objec-
tion, to say the plea can if bad do the plaintiff no harm by
being in the record. That is an inquiry, upon which this
Court should scarcely enter, nor should it speculate upon the

effect of an improper plea filed in prejudice of the plaintiff's rights. If it be insufficient and no answer to the plaintiff's action, it should be rejected when objected to, nor should the plaintiff be put to an issue upon it.' The views of Judge Lee were cited approvingly by Judge Haymond in delivering the opinion of this Court in *Griffie* v. *McCoy*, 8 W. Va. 206. In my judgment the refusal to reject a plea, which the court ought to reject, is a good ground for reversal, unless, when all the facts have been certified by the court below, it appears affirmatively to this Court, that the plaintiff could not have been injured by having to try his case on such improper plea."

These remarks would obviously be equally applicable, where the plaintiff has been denied his right to file a proper replication. But in this case, if the replications tendered by the plaintiff to the special plea were proper, it appears most satisfactorily from the record, that he could not have been injured by the improper rejection of them by the court; for not only was all the evidence, which the plaintiff would have introduced under them, assuming them to have been sufficient in law, equally admissible on the general issue of *non assumpsit*, which had been filed, but the certificate of facts shows, that in point of fact all the plaintiff's evidence offered to prove every fact in these special replications was permitted to go before the jury without objection; but, as we will presently show, the plaintiff himself proved another fact before the jury, which necessarily made these special replications though fully proven no answer to the defendant's plea of *non assumpsit*, and render a verdict against the plaintiff, such as the jury returned, inevitable, if the law was not utterly disregarded.

We will now consider, whether the plaintiff established his cause by the evidence before the jury. His action was to recover back money, which, he claims, he was compelled to pay as security on a bond dated November 3, 1870, for $734.57 payable on May 1, 1871, to the trustees of the sinking fund of Parkersburg, W. Va. This bond was signed and sealed by P. G. Van Winkle, the testator of the defendant, and by W. W. Van Winkle, the plaintiff, as his security. The plaintiff by his own evidence proved, that the trustees of this sinking fund, when this bond was executed, were the mayor

of the city of Parkersburg, C. H. Shattuck, the defendant's testator, P. G. VanWinkle, the principal in this bond, and W. N. Chancellor.   These trustees who were not a corporation but were a committee to manage the sinking fund of the city of Parkersburg so as to pay off the subscriptions of the city to the North Western Virginia railroad, &c., consisting of the mayor of said city for the time being and two other persons appointed by the council of the city of Parkersburg, who were removable for cause by the council.   The persons, who composed these trustees, were in this manner changed from time to time.   It follows of course, that this bond must be legally regarded as executed to the defendant's intestate, P. G. VanWinkle, C. H. Shattuck and W. N. Chancellor, the designation in it of them as trustees of the sinking fund of Parkersburg, W. Va., being legally nothing but *descriptio personis.*

Of course a bond could not be executed to the "trustees of the sinking fund of the city of Parkersburg W. Va." unless we regard this as simply a mode of describing the persons, who when the bond was given, were then trustees. For the trustees of the sinking fund of Parkersburg, W. Va., not being a corporation, it would be impossible to give a bond, in which the obligees should be not only the then trustees but should change from time to time, as these trustees were changed.   Such a bond would be utterly void for uncertainty; for in every bond or other obligation there must of course be a certain obligee.   There can of course be no contract, unless there be at least two certain parties to it.   It is therefore impossible to give any legal effect to this bond, unless we regard the obligees in it as the individuals P. G. VanWinkle, C. H. Shattuck and W. N. Chancellor.   So regarded it presents the case of a bond joint and several in form, in which the obligees are three individuals and the obligors are one of the obligees and another person.   If this bond had been a joint bond instead of a joint and several bond, the cases are all agreed, that the obligors could have brought no suit at law upon it for the obvious reason, that all the obligees would have been necessarily plaintiffs and all the obligors defendants, and as one of the obligees was also an obligor, one of the plaintiffs would

necessarily have been also a defendant, and in a common
law suit a party never could be both a plaintiff and de-
fendant, and it has been held by highly respectable courts,
that such a bond though joint and several was absolutely null
and void as to all the obligors, the reasons for so holding
being, that there can in such suit be no description of the
bond set out without showing, that it was a bond, in which
one at least of the obligors was also an obligee, and no
person can bind himself to paying money to himself;—
secondly, because there can be no delivery to an obligee in
a bond by the obligee, nor can there be a delivery of a
bond by one obligor to another obligor, and yet this must
in such case occur, for a delivery is absolutely necessary to
make any bond valid.    These reasons necessarily make such
a bond invalid as to the person, who is both obligor and
obligee; and, if so, it ought to be declared void *in toto*; as
otherwise the intention of the parties would be violated; for
in such a case as the one now before us the surety must
have intended, that the principal should be also bound by
the bond, and not that he, the surety, should alone be
bound; and as such a bond could not be enforced at all
without such a construction, it should be taken to be void
altogether.    There is certainly much force in this view of
the legal effect of this bond; and such a view of it is sus-
tained by decisions in the Supreme Court of North Carolina.
(*Justice* v. *Armstrong*, 3 Dev. 284; *Justice* v. *Dozier et al.*, 3
Dev. 287; *Justice* v. *Bonner*, 2 Dev. 289; *Fitz* v. *Green*, 3
Dev. 291).

But some of the courts while admitting, that one can not
be both plaintiff and defendant in the same suit at law,
whether others be associated with him or not, are yet dis-
posed to regard the objection above stated as technical and
not as *substantial* and *radical* defects; and if these technical
objections are overcome in any way, they hold, that such a
bond might be enforced in a common law suit, and that it
ought not to be regarded as void *in toto*.    Thus in *Bradford*
v. *Williams*, 4 How. 576, the Supreme Court of the United
States held, that, if by statute as in this State an assignee of
such a bond, when it was a joint and several bond as in the
case before us, was allowed to bring a suit at law in his own

name, he might enforce such a bond in a common law suit against the party, who was an obligor and not an obligee in the bond (W. W. Van Winkle in the case before us), even though it could not be enforced against the party, who was both obligor and obligee (P. G. Van Winkle in this case), it being absolutely void as to him. When such suit was brought, none of the objections above named would be applicable; *first*, there would be no necessity for the bond to be described in this suit otherwise than as simply the obligation of W. W. Van Winkle. So that on the plea of the declaration it would not appear, that the obligor on the bond was also an obligee; *secondly*, according to the views of the Supreme Court the difficulty in reference to the obligor, in this case P. G. Van Winkle, delivering the bond to himself was, when the suit was brought by an assignee in his own name, overcome in this way; W. W. Van Winkle was competent to deliver this bond to the obligee, P. G. Van Winkle was the only obligor, who could not have delivered this bond, as he was also an obligee; but if the obligees had assigned the bond, P. G. Van Winkle joining in the assignment would be estopped from setting out the objection for the purpose of invalidating his own act; and thus the *inchoate* and improper delivery as to him in the first instance arising out of his double relation as obligor and obligee became complete by his joining the assignment and delivering the bond to the plaintiff. If this reasoning be regarded as sound, and the trustees of the sinking fund of Parkersburg, the obligees in this bond, had assigned the bond to a third person, such third person might have brought a suit at law upon it against W. W. Van Winkle; and though the bond might have been void as to P. G. Van Winkle, it would when sued upon by an assignee be held valid as to W. W. Van Winkle, and his intention in executing this bond would not be violated, as he must have intended to bind himself securely, when he signed the bond.

The Supreme Court in this case expressly waived the question, whether the obligees by a suit at law could have enforced this obligation, it being joint and several, against the obligor, who was not an obligee in the bond, that is, in this case against W. W. Van Winkle. In the case of *Daniels* v.

*Crooks*, 3 Dana 64, the court based its decision upon the assumption, that, where a bond with collateral condition was given by several obligors to several obligees, a portion of the condition being that the principal obligor would redeem the stock of the several obligees in a certain company at its par value per share, a suit at law might be brought against all the obligors in such bond, though some of them were also obligees, by any single obligee not also an obligor for the breach of trust portion of the condition above specified, in which each obligee had a separate interest, though such a suit could not be brought for a breach of any part of the condition, in which all the obligees were jointly interested.

It seems to me, that the soundness of these views expressed in this Kentucky case are very questionable; for long since it was held, that, though a contract be by its language made joint *and several* with several obligees for the payment of a sum to one of them only, all the obligees must join in the suit at law on such contract, because by it but one thing is to be done, and all have a legal interest in the performance of that thing, although but one of the obligees has a beneficial interest. (*Anderson* v. *Martindale*, 1 East 497). But where as in the Kentucky case not one but a number of different things were to be performed, perhaps the law would be different. I do not deem it necessary to express any decisive opinion as to whether the law laid down in this Kentucky case be or be not good law.

The question under consideration was before the court of appeals of Virginia in the case of *Booth* v. *Kinsey*, 18 Gratt. 560. The views taken by Judge Moncure, who delivered an opinion in this case, were substantially these; that it is impossible for a man to be a debtor and creditor at the same time. As applied to a single individual in his own right there is an inherent impossibility in the thing; and in such case the defect is *substantial* and *radical*. But a man either severally or jointly with others can be either debtor or creditor to himself and others. That is the case, whenever one partnership is indebted to another, and some one person is a partner in each partnership. The same principle applies to other cases; for in every case of the kind there is a *quasi* partnership between the parties associa d on either side, that is, be-

tween the several obligors on the one side and the several obligees on the other side; but each of these partnerships is limited to the purposes of the contract. By the one *quasi* partnership the obligors are partners to receive the money, and by the other *quasi* partnership the obligees are partners to pay the money agreed to be paid. It is certainly true, that in the same suit at law a man can not be either a sole plaintiff or a joint plaintiff with others and at the same time be a sole defendant or a joint defendant with others. But this is a *technical* and not a *substantial or radical* defect. It applies to the remedy and not to the right; and may be obviated by resorting to a court of equity, in which a man can be a plaintiff and a defendant in the same suit, or by introducing a new party to the contract, in whose name the suit at law may be brought as in *Bradford* v. *Williams*, 4 How. U. S. 576, or by suing at law in such manner (if the form of the contract or the law will admit it) as not to exhibit the apparent inconsistency of making the same person plaintiff and defendant.

Judge Moncure expresses the opinion on p. 563, that when a bond is joint and several, and the obligee is one of the obligors, he might maintain an action at law in his own name against one of the other obligors, but such suit could not be maintained at law, if the bond was a joint bond and not a joint and several bond. It is admitted, that this view is opposed by the North Carolina cases before cited, which Judge Moncure disapproved not even admitting that the bond was a nullity even as to the obligor who was also obligee; and this principle was not, as thus broadly delivered by Judge Moncure, decided in the case before the Virginia court, which was the case of a forthcoming bond, and it was by virtue of the statute not only a joint and several obligation, but it was an obligation, which could, if it were given by them, be enforced against two by the statute, though at common law no joint and several obligations executed by them could be enforced against two of them but only against each of them severally or all of them jointly. Then by the statute a delivery of a forthcoming bond was to make it binding not to the creditor, the obligee, but to the sheriff. And it was good according to *Turnbulls ex'or* v. *Chaibornes*, 3 Leigh 392, though made payable to a creditor, who was

dead, when the bond was executed, and to whom, therefore it could not be delivered.   But an ordinary bond executed to a dead person would clearly be void.

Judge Daniel did not go so far as Judge Moncure but confined his views strictly to the case before them, a motion on a forthcoming bond, in which the obligee, the creditor, was also one of three obligors.   Such obligee, it was decided by the court, could sustain a motion against the other obligors.   It was also held, that in such a case the obligor being one of the two securities in the bond could in a court of equity be enjoined from enforcing more than a moiety of the debt against the other security, he being entitled to contribution as against the creditor the other security.   Judge Daniel in his opinion speaking of the North Carolina cases said, the reasons given by the North Carolina supreme court for holding the bond an absolute nullity are mainly of a technical character and had, he thought, very little application to the case then before them, when the peculiar nature of a forthcoming bond was considered and the remedies upon it together with the statutory provisions for the summary relief of securities against their principals and co-securities.

From this review of the authorities it would seem to be not satisfactorily settled, whether an ordinary bond for the payment of a specific sum by several obligors jointly and severally to several obligees, one of whom was also one of the obligors, is a bond void *in toto*, or whether the defect in such a bond is to be regarded as a *technical* defect affecting the remedy and not as a *substantial* and *radical defect* affecting the validity of the bond itself; or whether the true view be, that such a defect in an ordinary bond for the payment of a sum of money, if the bond be joint, would be a substantial defect rendering the bond a nullity, but if the bond be a joint and several bond, the defect would be a *substantial* defect, so far as it purported to bind the obligor, who was also one of the obligees in the bond, but would be only a *technical* defect, so far as the bond purported to bind the other obligor, who was not an obligee also in the bond.   Much might be said in advocacy of each of these views; but I regard it as unnecessary in this case to determine the legal effect of such a joint and several bond generally, as, let it be what it may, the facts in

this case, it does seem to me, clearly establish, that this bond of $734.57 dated November 2, 1870, payable May 1, 1871, with interest from its date to the trustees of the sinking fund of Parkersburg, W. Va., and signed and sealed by P. G. VanWinkle as principal and W. W. VanWinkle as surety, and which purported to bind them jointly and severally, was from its inception a mere nullity and imposed upon neither of the obligors any obligation either legal or equitable.

The facts proven show beyond controversy, that this bond though properly signed and sealed by each of the obligors was never in fact delivered by them to the obligees, who were neither the city of Parkersburg nor the trustees of the sinking fund of Parkersburg, as they never were a corporation. The obligees in this bond were three individuals P. G. Van-Winkle, W. N. Chancellor and C. H. Shattuck, and they were to hold this bond as trustees for the use and benefit of the city of Parkersburg and the North Western Virginia Railroad Company. P. G. VanWinkle, the principal obligor in this bond, was at the time, he and his surety W. W. Van Winkle executed it, not only one of the obligees in the bond; but after its execution it remained up to the time of his death some eighteen months under his exclusive control and in his possession, he being the treasurer of the trustees of the sinking fund of Parkersburg. This bond never was during the lifetime of P. G. VanWinkle, so far as the facts proven in this case show, ever in the custody of either W. N. Chancellor or C. H. Shattuck the joint obligees in this bond with P. G. VanWinkle. This bond having always remained undelivered in the possession of P. G. VanWinkle, the principal obligor in it, up to April 15, 1872, when he died, came into the possession of W. W. VanWinkle, the other obligor in it, he having qualified as the administrator with the will annexed of P. G. VanWinkle. After this bond had thus come into the possession of W. W. VanWinkle, one of the obligors, he handed it together with other assets of the trustees of the sinking fund of Parkersburg to W. N. Chancellor, who was one of the obligees in this bond, but who never had possession of it till after the death of P. G. VanWinkle, the principal obligor. It was handed to him then by W. W. VanWinkle not as a delivery of the bond to

him as one of the obligees to give it effect as a bond; but it was handed to him, simply because he W. N. Chancellor had been appointed the treasurer of the trustees of the sinking fund of Parkersburg.

It thus clearly appears, that there never was any delivery of this bond by the obligors in it to any of the obligees so as to make it effectual as a bond, it being unquestionable, that the delivery of an ordinary bond such as this is absolutely essential to give it any effect either in a court of law or equity. Without such delivery such a bond is an absolute nullity. This bond was therefore void *in toto* and utterly incapable of being enforced either in a court of law or equity. No doubt the trustees of the sinking fund of Parkersburg or the city of Parkersburg or the Northwestern Railroad Company by proper proceedings in a court of law or equity might have compelled P. G. Van Winkle as the treasurer of the sinking fund of Parkersburg to have accounted for any portion of this sinking fund remaining in his hand, as treasurer and unaccounted for by him, and his sureties on his official bond as treasurer would have been responsible for any such defect. But the responsibility of P. G. Van Winkle as treasurer of this sinking fund and his responsibility on this bond of $734.57 are two entirely different things. If P. G. Van Winkle never could have been sued on this bond of $734.57, it is equally obvious, that his surety in this bond, W. W. Van Winkle, was never liable to be sued upon it, as it had never been delivered, and I can not see, how he could have been subjected to any suit in a court of equity because of his having signed this bond as the surety of W. W. Van-Winkle. If the fact, that he executed this bond, imposed on him no legal obligation, I can not see how a court of equity could upon any principles, which control such a court, have imposed any obligation on him, when he had neither incurred a legal obligation nor received any benefit or consideration in the transaction.

My conclusion therefore is, that there never was a time, when there was any obligation imposed on W. W. Van Winkle, the plaintiff in this suit, either legal or equitable, to pay any portion of this bond of $734.57; and when he settled it by giving his note and Thomas Murphy as his security on or

about January 1, 1884, he was clearly under no obligation of any sort legal or equitable to pay this bond, which had then been due for more than thirteen years.

It is contended however by the counsel for the plaintiff, that, if this bond was originally a nullity, still the plaintiff is entitled to recover in the action of *assumpsit*, because this sum of $306.06, which he settled with the trustees of the sinking fund by giving his individual bond with security to them, and to recover which this action was brought, may be regarded as a payment made to them by the plaintiff on the indebtedness of P. G. VanWinkle, their late treasurer, arising out of his default as treasurer in accounting for the funds, which came into his hands.    The first difficulty in sustaining such a view is, that this suit was not brought by the plaintiff to recover money, which at the request of P. G. VanWinkle the plaintiff paid to the trustees of the sinking fund of Parkersburg, to be applied to what might be his default as treasurer of such sinking fund.    The character of the suit, which being an action of *assumpsit* with the common counts in the declaration is indicated by the bill of particulars filed with it as well as by the special count. The bill of particulars is for "amount paid as security for and on behalf of said decedent (P. G. VanWinkle) on his note" (should be bond) "for the sum of$734.57, dated November 2, 1870, payable on or before the first day of May next, 1871, to the trustees of the sinking fund of Parkersburg.    $306.06." Under such a bill it would have been clearly not admissible for the plaintiff to prove, that he had at P. G. VanWinkle's request paid money for him to the trustees of the sinking fund of Parkersburg to satisfy his default as their treasurer.  But if the bill of particulars had shown, that this suit was brought to recover back money, which the plaintiff had paid to the trustees of the sinking fund of Parkersburg to satisfy the default of P. G. VanWinkle as their treasurer, still the evidence would have failed to sustain such suit, as P. G. Van Winkle never made such a request of the plaintiff; and though, when the plaintiff made the payment to these trustees, for which this suit is brought, the personal representative of P. G. VanWinkle may have still been bound for any breach of his trust as treasurer of such sinking fund despite

the lapse of time, yet it was a mere voluntary payment on the plaintiff's part made without any request either verbal or written by P. G. Van Winkle. The plaintiff's counsel argues, that such a request was made by P. G. Van Winkle, because these minutes of the trustees of the sinking fund of Parkersburg of November 2, 1870, were proven and signed by P. G. Van Winkle, treasurer. This record is as follows:

"Mr. Chancellor, from the committee on investments, reported that the sum in bank, belonging wholly to the railroad-loan-fund, amounting to the sum of $734.57, had been loaned to P. G. Van Winkle, who with his surety, W. W. Van Winkle, had executed to the trustees of the sinking fund their single bill for the amount, dated on this day and payable on the first day of May next, with interest from date, which single bill the committee exhibited to the board.

"On motion, the board adjourned.

"C. H. SHATTUCK, *President.*

"P. G. VAN WINKLE, *Treasurer.*"

I am unable to see in this any such request. This entry does show, 'that the plaintiff, W. W. Van Winkle, did execute this bond of November 2, 1870, for this $734.57, and this was then the balance in bank to the credit of the sinking fund. What was the balance due from P. G. Van Winkle treasurer at his death eighteen months afterwards, in no way appears. But be it what it may, there was in this transaction no request by P. G. Van Winkle, that this balance should be paid by the plaintiff, W. W. Van Winkle. What he did do was to request him to sign this bond of $734.57 as his surety. But this bond, we have seen, was never delivered but remained in the hands of the principal obligor and under his control till his death, and it was a mere nullity. The case of *Thompson* v. *Thompson,* 5 W. Va. 190, is relied on by the plaintiff's counsel as sustaining his view, that in an action of *assumpsit* the plaintiff might recover in this case the money, which he paid as surety on this bond, by treating it as money paid on the default of the principal in the bond P. G. Van Winkle as treasurer of the sinking fund. But the case will not sustain him. In the first place there was in that cause an item in the bill of particulars specifying accurately, that the amount sued for was recovered by the defendant for

the hire of plaintiff's slave which the court regarded as proved, though the form the transaction took was, that the hire was not directly collected as hire, but that the defendant's intestate as agent of the plaintiff first hired out the slave and took the bond payable to himself instead of to his principal, and after the death of the agent his administrator collected this bond knowing, that it was for the hire of one of the plaintiff's slaves, and accounted for it in his settlement as such administrator. When he collected this money, he knew that it was for the hire of the plaintiff's slave, and that the amount of this collection did not belong equitably to him as administrator of this agent, who had taken improperly the bond to himself. The court held, that this hire of this negro of the plaintiff collected by the defendant as the administrator of the plaintiff's agent on this bond for this hire to him payable improperly to this agent, and which hire the estate of the agent got the benefit of, could be recovered in an action of *assumpsit* by the plaintiff; and this decision seems to me to have been right; for in an action of *assumpsit* I may recover money in your possession which *ex equo et bono* belongs to me. But this case in no way resembles the one before us. If it were true, as claimed by the counsel of the plaintiff, that this bond of $734.57 was originally binding and that the administrator of the principal obligor, P. T. VanWinkle, before it became barred by the lapse of ten years, after it became due, prevented the statute of limitations from becoming a bar by a *verbal* promise to pay this bond out of the assets of the estate of the principal obligor, this *verbal* promise might not have prevented, it seems to me, W. W. VanWinkle from successfully resisting the enforcement of of this bond against him in January, 1884, by relying on the statute of limitations, even had he been originally bound legally to pay the bond.

The question, whether the enforcement of this bond, assuming that it was originally a valid obligation, was barred by the statute of limitations on January 1, 1884, when paid by the plaintiff in this action, has been elaborately argued, it being contended by the counsel for the plaintiff, that the statute of limitations did not bar this claim, first because it was a trust-fund in the hands of P. G. VanWinkle as treasurer of the

trustees of the sinking fund of Parkersburg, and secondly because the personal representative of the principal obligor, when this debt was *untouched* by the statute of limitations" promised to pay this debt *verbally* out of the assets of the estate when received.   And that, it is claimed, is the law despite the provision in our Code, " that no acknowledgment or promise by a personal representative shall charge the estate in any case, in which but for such acknowledgment or promise the estate could have been protected by the plea of the statute of limitations," and the other provision that " If any personal representative shall pay any debt, the recovery of which could have been prevented by reason of lapse of time or otherwise, knowing the facts by which the same could have been prevented, no credit shall be given him therefor." 2 Kelly's Stat. ch. 119 § 9 and ch. 92 § 6.

I have not deemed it necessary or proper to express any opinion on these questions, because according to the views, which I take of this case, they are not involved in the case before us; and for the like reason I deem it unnecessary to express any opinion as to whether the instruction given by the court below to the jury was or was not correct.  It is clear, that, if the views, which I have expressed, be correct, the instruction given by the court to the jury could not possibly have prejudiced the plaintiff, who proved by his own oath, that he was not entitled to recover in this action, as the amount, which he claimed, that he had paid as surety on behalf of the decedent P. G. VanWinkle on this bond of $734.57 payable to the trustees of the sinking fund of Parkersburg, was not paid as such security but was paid by him voluntarily, when he was under no obligation legal or equitable to pay the same.   The court below committed no error, which could have been prejudicial to the plaintiff, and upon the testimony introduced by him before the jury upon a demurrer to it by the defendant the court must have rendered the judgment, which it did, that the defendant recover of the plaintiff his costs about his defence expended.

The judgment of the circuit court of December 21, 1885, must be affirmed; and the defendant in error must recover of the plaintiff in error his costs in this Court expended and $30.00 damages.

AFFIRMED.